*Ex parte* THORNTON.

(*Circuit Court, E. D. Virginia.* June 22, 1882.)

1. LICENSES AND TAXES—RIGHT TO SELL GOODS UNDER.

The payment of taxes due in the home state of a merchant does not of itself entitle him to sell his goods in all other states free of taxation, nor is such exemption secured by the equal-privileges clause of the national constitution.

2. SAME—STATE LAWS—WHEN NULL AND VOID.

If the provisions of a state license and tax act are designed by the legislature to discriminate against non-resident merchants, and against goods sold from other states, in favor of resident merchants and goods held in the state for

sale, and if such discrimination be the practical effect of the law, and these two facts are legally established and brought home to the conviction of the court, the law must be declared null and void.

3. SAME—COMMERCIAL TRAVELERS—DISCRIMINATION AGAINST NON-RESIDENTS.

If the legislature of a state frames a law relating to merchants and sample merchants with the intention to discriminate against non-residents in favor of residents, and against goods in other states sold by sample in favor of goods held within the state for sale, and if the legislation has this practical effect, then such provisions are null and void, and all arrests and prosecutions under them are illegal.

4. SAME—EXTENT OF AUTHORITY OF LEGISLATURE.

The legislature has a right to discriminate against sample merchants in favor of merchants, the state being sovereign mistress of her own policy in determining what classes she shall lay a license tax upon, and what classes she shall exempt from such taxation, and in deciding how lightly or how heavily she shall make such a tax.

5. SAME—RESIDENT MERCHANTS—NON-RESIDENT AGENTS.

The assumption that a merchant is necessarily a resident, and that a sample merchant is necessarily a non-resident, is an arbitrary one, and one which a court of justice has no right, by mere inference, to accept as true.

6. SAME—EQUALITY OF LICENSES AND TAXATION.

Where an act of the legislature taxes each additional sample agent $50 for all goods sold to the amount of $50,000, and taxes the merchant for each additional $50,000 of goods sold by him or his agents, the same amount of $50, the law practically equalizes the tax upon the two classes, and no discrimination results.

7. SAME—STATE LAWS—CONSTITUTIONALITY OF.

It is only when a law discriminates against a foreign resident of a certain class, or against the goods held in another state for sale, in favor of a resident of the same class, and goods held within the state for sale, that it is obnoxious to the provisions of the national constitution in relation to the privileges and immunities of citizens of the several states, or the regulation of commerce with foreign nations and among the several states, or the prohibition of laying imposts or duties on exports or imports.

Petition for the Writ of *Habeas Corpus.*

*W. H. Burroughs* and *Charles Poe,* for petitioner.

*Frank S. Blair,* Atty. Gen., for the Commonwealth.

HUGHES, D. J. On the sixth of June, 1882, the petitioner, Hay T. Thornton, was committed to jail by a justice of the peace of Norfolk city on a charge of having sold and offered to sell in the said city, goods, wares, and merchandise by sample, card, description, or other representation, without having obtained a sample-merchant's license in accordance with sections 31 and 32 of the act of the general assembly of Virginia, approved April 22, 1882, entitled "An act for the assessment of taxes on persons, property, income, and licenses, and imposing taxes thereon for the support of the government and free schools, and to pay the interest on the public debt."

On the same day he filed his petition before this court, praying the award of the writ of *habeas corpus*, and objecting to his arrest on the ground that the provisions of the law under which he was held in custody were in violation of the constitution of the United States, and therefore null and void. The writ was issued as of course, and the sergeant of the city brought the petitioner before this court at once, and made return according to the facts. Thereupon the petitioner was admitted to bail on his recognizance to appear on a future day named to answer the judgment of the court in this matter. The case was adjourned to Richmond for hearing on the fifteenth of June, and directions were given that notice of the hearing should be filed with the attorney general of Virginia. On that day the case was heard on the papers in the cause, and on argument by the attorney general of Virginia for the state, and by counsel for the petitioner.

The petition sets out, among other things, the following facts: The petitioner is an employe of Samuel D. Egerton & Co., wholesale grocers in the city of Baltimore, Maryland. His duty is to travel and take orders for the sale of goods of the house named. His sales are made by sample, card, or description, and the goods, after sales are made, are shipped directly from the warehouse of Egerton & Co. in Baltimore to the purchaser. The petition concedes that the petitioner was selling by sample or card, etc., when he was arrested. It does not aver that the firm employing him had taken out a license as sample merchants in Virginia, or that he had power of attorney to act for them, as is required by law. The petition avers that the firm of Egerton & Co. had paid to the state of Maryland and to the city of Baltimore the taxes required to be paid there by law for conducting their business as wholesale grocers there.

The act of assembly under which the petitioner was arrested classifies tradesmen doing business in Virginia as follows: (1) Merchants; (2) commission merchants; (3) sample merchants; and so on.

The complaint of the petitioner is based upon sections 27 and 28 of the act of assembly in question, which relate to merchants; compared with sections 31 and 32, which relate to sample merchants. These sections provide that a sample merchant must pay $250 for the privilege of selling by sample in the state, by means of one agent; and, if he employs more than one, then he must pay $50 additional for each additional agent; and they provide that any merchant who pays a license tax of as much as $250 may sell by sample agents, without limit to the number of agents. But, although the merchant may employ an unrestricted number of sample agents without

an increase of tax merely on account of the increase of their number, yet his tax is increased on another scale. If his purchases amount to $50,000, he pays a tax of $220; and if they are more than $50,000, he pays at the rate of 10 cents per $100, or $1 for every $1,000 of the increase; that is to say, he pays $300 on $100,-000; $400 on $200,000; $500 on $300,000; $600 on $400,000; and so on. And no merchant can sell by means of sample agents unless he pays a tax of at least $250. If there was intention on the part of the legislature to assimilate the tax on sample merchants with that on merchants, they seemed to assume that after each had been required to secure a license by paying each a tax of $250, every sample agent after the first would sell goods to the amount of $50,-000, for license to do which he would pay $50, while the merchant, if increasing his sales by agent or otherwise, is charged the same additional tax of $50 for each increase in sales of $50,000.

The charge of the petition before me is that those of the foregoing provisions of the Virginia law relating to merchants are meant for residents and designed to favor the business of residents, while those relating to sample merchants are meant for non-residents and designed to prejudice the business of non-residents, and that these provisions, taken together, are an injurious discrimination against non-residents in favor of residents, and are therefore repugnant to the following clauses of the constitution of the United States:

"The citizens of each state shall be entitled to all immunities and privileges of citizens in the several states." Art. 4, § 2. "Congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." Art. 1, § 8. "No state shall, without the consent of congress, lay any imposts, or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; * * * and all such laws shall be subject to the revision and control of the congress." Art. 1, § 10, sub. 2.

It is a fundamental principle that statutes are subordinate to constitutions, and that, where these conflict, the statute must, to the extent of the conflict, be held inoperative. The power of deciding whether or not such conflict exists, is, for the most part, reposed in the courts, state or federal; and although they exercise it with reluctance, they exercise it without hesitation. They are, however, naturally inclined, whenever called upon to scrutinize adversely the statute law, to confine their purview within the narrowest practicable limits, and to endeavor rather to preserve than to overthrow.

In the present instance I am at liberty to consider only those provisions of the Virginia license and tax act of April 22, 1882, which bear upon the case of the petitioner. If, among other provisions of that act, there be those liable to such objections as are urged against these, they are beyond my present cognizance, and, in point of fact, have not at all entered into the consideration of this case. I am to pass only upon a very few of the provisions of the voluminous act of which sections 27, 28, 31, and 32 are part, and I wish to exclude the conclusion that the whole act, or any considerable part of it, has been under review on this occasion. Nor am I at liberty to deal with the present case except upon the facts specifically averred in the petition before me. If there are facts connected with the petitioner's case or conduct, other than those formally alleged in the petition under oath, they are *dehors* the record and beyond my purview. The petition omits to allege that Egerton & Co. had paid the tax as sample merchants to the state of Virginia required by the license and tax act of 1882. It omits to allege that the petitioner, Thornton, at the time of selling by sample, had with him, as that act requires, any copy of a certificate from the clerk of some county or corporation of the state showing that his employers had obtained license to sell by sample in Virginia. It omits to allege that Thornton had with him his employers' power of attorney authorizing him to sell by sample for them, as the same act requires. On the subject of taxes the petition merely avers that Egerton & Co. had paid in Baltimore the taxes due from wholesale grocers to that city, and to the state of Maryland, under their local laws; and the complaint of the petitioner, therefore, would seem to be that he is aggrieved because he is not allowed in Virginia to sell goods by sample for a non-resident mercantile firm free from taxation here.

I do not suppose petitioner's counsel to pretend that the payment of taxes due at home by a merchant resident in one state itself entitles him to sell his goods in all other states free of taxation, or to pretend that such exemption is secured by the equal-privileges clause of the national constitution. Such payment only entitles the Maryland merchant to the enjoyment in Maryland of the privileges accorded by Maryland. When he enters any other state, it is not the privileges which Maryland grants her citizens that belong to him under the constitution of the United States, but only the privileges which the state he enters accords to her own citizens. Such a state may tax him just as she taxes her own citizens, but not otherwise; and she may tax him with sovereign disregard of the taxation which

Maryland may impose upon her citizens. This is elementary law. Even before 1860 it was never contended, even by the advocates of extreme doctrines on his subject, that the slaveholder of South Carolina who voluntarily entered Pennsylvania with his slave carried with him the slaveholding privilege allowed by his own state. If he claimed his slave, it could only be as a fugitive from service, and by virtue of a provision of the national constitution, distinct from the one under consideration, which allowed the privilege of reclaiming fugitives from service. The privilege given by South Carolina was never held to secure the constitutional privilege of slaveholding in other states. No more does the state license to sell goods in Maryland secure the constitutional privilege of selling in the other states, or of being credited there by the license tax paid in Maryland. I am very sure that the complaint of the petitioner in the case at bar is based upon other grounds than that by having obtained the privilege of selling goods in Maryland, he thereby became entitled to sell them free of taxation in the other states of the Union.

It is stated in the brief of petitioner's counsel that Egerton & Co. had in fact paid the sample merchant's tax of $250 to Virginia when Thornton made the sale for which he was arrested. But I conceive that the allegation of this fact was purposely omitted from the petition, in order that this case may be decided upon other grounds than would have been presented if Thornton had been charged merely with the non-possession and non-exhibition of the clerk's certificate and power of attorney which the law required him to have with him when he sold as agent by sample. While such payment, if made, relieves the petitioner from the imputation of having acted in contumacy towards the state and contempt of her laws, and suggests that the purpose of his act of selling was not criminal, but was only to procure a judicial decision upon the validity of the provisions of law under which he has been arrested; still, I am not at liberty to consider the case with reference to such an incident as this, which in technical contemplation forms no part of it, and am bound to deal with it exclusively upon the basis of the facts set out under oath and disclosed by the record.

The broad ground on which it is evidently intended to rest this application for the discharge of the petitioner from arrest is that the clauses of the Virginia license and tax act of 1882 which have been mentioned above are null and void, and that the arrest of this petitioner under those clauses was therefore illegal. It must be conceded that, if the provisions of the Virginia license and tax act

which have been set out were designed by the legislature to discriminate against non-resident merchants and against goods sold from other states in favor of resident merchants and goods held in Virginia for sale, and if such discrimination be the practical effect of the law, and if these two facts are legally established and brought home to the conviction of the court, then the law in these respects is null and void, and must be so declared to be.

In order to the intelligent discussion of the case at bar, it is well to examine the decisions of the United States supreme court in cases construing the clauses of the constitution invoked by the petitioner. It will be seen that none of these cases are precisely like that of this petitioner; but they all illustrate the principles which govern it.

In *Brown* v. *Maryland*, 12 Wheat. 419, the United States supreme court considered a law of Maryland which required all importers of foreign merchandise who sold the same by wholesale, in the original bale or package, to take out a license. The law was resisted as unconstitutional. The court held it to be unconstitutional on three grounds: (1) That it imposed a duty on imports; (2) that it was a regulation of commerce; and (3) that the importer who had paid the duties required by the United States had acquired a right to sell them in the same original packages in which they were imported. The court did not deny, but expressly held, that when these goods were broken up from their original packages, and became mingled with the general merchandise of the country, they were liable to local taxation just as other merchandise.

This case related to goods imported from a foreign country. The following case related to goods of one state brought into another. It was the case of *Woodruff* v. *Parham*, 8 Wall. 123, in which the law reviewed was one which the city of Mobile, in Alabama, had passed, in pursuance of a provision of her charter, authorizing the taxation for municipal purposes of real and personal estate, *sales at auction*, sales of merchandise, etc. Under this provision an auction house of the city was taxed for sales of the products of states other than Alabama, made in the original unbroken packages. The tax was objected to as an interference with the freedom of commerce between the states, and the case was carried to the United States supreme court. That court decided that goods brought from one state into another were not imports in the sense of the constitution, and then said: "The case before us is a simple tax on sales of merchandise, imposed alike upon all sales made in Mobile, whether the sales be made by a citizen of Alabama or of another state, and whether the goods sold are the produce of

that or some other state. There is no attempt to discriminate injuriously against the products of other states or the rights of their citizens, and the case is not, therefore, an *attempt to fetter commerce* among the states, or to deprive the citizens of other states of any privilege or immunity possessed by citizens of Alabama." The court upheld the tax.

In *Cook* v. *Pennsylvania*, 97 U. S. 566, it was held, as it had been held in *Brown* v. *Maryland*, that the state tax on foreign goods in the original package is in conflict with sections 8 and 10 of article 1 of the United States constitution. The court virtually decided that if the goods, the tax on sales of which, in *Woodruff* v. *Parham*, had been of foreign importation rather than goods brought from another state, the tax would have been unconstitutional. In the same case the supreme court held, further, that a tax laid by a state on the amount of sales of goods by an auctioneer is a tax upon the goods sold.

In the case of *Webber* v. *Virginia*, 103 U. S. 350, the court held that a tax upon manufacturers' agents is a tax upon the goods manufactured; and *if this is made to depend upon the foreign character of the articles*,—that is, upon their having been manufactured without the state,—it is to that extent a regulation of commerce. "No one," it says, "questions the general power of the state to require licenses for the various pursuits and occupations conducted within her limits. * * * But where a power is vested exclusively in the federal government, and its exercise is essential to the perfect freedom of commercial intercourse between the several states, any interfering action by them must give way." The law reviewed in this case was the license and tax act of Virginia of 1876, which provided virtually, as stated by the court, that "the agent for the sale of articles manufactured in other states must first obtain a license to sell, for which he is required to pay a specific tax for each county in which he sells or offers to sell them, while the agent for the sale of articles manufactured in the state is not required to obtain a license or to pay any tax." The court said: "Here there is a clear discrimination in favor of home manufactures, and against the manufactures of other states," and pronounced the law void. In this case the discrimination against the manufactures of other states, which was the vice of the law, was apparent from the terms and tenor of the law, and did not require to be brought home to the conviction and comprehension of the court by proof *aliunde*.

In the case of *Welton* v. *Missouri*, 91 U. S. 275, the state law reviewed was one imposing a license tax upon peddlers who dealt in

and sold goods, wares, and merchandise which were not the growth, produce, or manufacture of the state of Missouri, and imposed no such tax on peddlers who sold such things which were the growth of Missouri. This law was held to be in conflict with the power constitutionally vested in congress to regulate commerce between the states, and was pronounced void.

In the case of *Ward* v. *Maryland,* 12 Wall. 418, the state law which was reviewed by the court was one that imposed on resident traders a license tax of from $12 to $150, according to a scale prescribed, and made it a penal offence for non-residents to sell goods, wares, and merchandise in the state by card, sample, or other specimen, without first obtaining a license so to do, and paying a tax of $300 for the license. The court said, speaking of the constitutional provisions on the subject of trade between the states, that they "would become comparatively valueless if it should he held that each state possesses the power, in levying taxes for the support of its own government, to discriminate against citizens of every other state of the Union. * * * The court is of opinion that the statute in question imposes a discriminating tax upon all persons trading in the manner described * * * who are not permanent residents in the state, and that the statute is repugnant to the federal constitution, and invalid for that reason."

Mr. Justice Bradley assented to the ruling of the court, but not only on the ground that the Maryland law discriminated in favor of residents against non-residents; but he said:

"I am further of opinion that the act is in violation of the commercial clause of the constitution which confers on congress the power to regulate commerce among the several states; and it would be so although it imposed upon residents the same burden for selling goods by sample as is imposed on non-residents. Such a law would effectually prevent the manufacturers of the manufacturing states from selling their goods in other states unless they established commercial houses therein, or sold to resident merchants who chose to send them orders."

That is to say, Justice Bradley holds that manufactures of other states, *as such,* cannot be taxed at all, unless taxed simply as manufactures, whether produced in or out of the state.

In the case of *Reading R. R.* v. *Pennsylvania,* 15 Wall. 232, it was held that a state statute imposing a tax upon freight taken up in the state and carried to another state, or taken up without the state and brought within it, by railroads or other modes of transportation, is repugnant to that provision of the United States constitution which

ordains that congress shall have power to regulate commerce with foreign nations and among the several states, etc.

In the *Passenger Cases*, 7 How. 283, the supreme court held that a state law which imposed a tax upon the master or owner of every vessel from a foreign port for each passenger brought by the vessel was a regulation of commerce by the state, and in conflict with the constitution and laws of the United States, and therefore void.

The same ruling was made in *Henderson* v. *Mayor*, 92 U. S. 259, in which case it was besides ruled, among other things, that in whatever language a statute may be framed, its purpose and its constitutional validity must be determined by the natural and reasonable effect of its provisions.

In *Crandall* v. *Nevada*, 6 Wall. 35, a state law imposing upon railroads and stage-coaches a tax per head upon every passenger they carried out of the state was held invalid for sundry reasons, but especially because it was a tax upon commerce and repugnant to the provision of the constitution which empowers congress to regulate commerce between the states.

Other cases might be cited in illustration of the provisions of the national constitution now under interpretation, and showing the construction which at various times the supreme court has put upon state laws charged to have been in conflict with them. I am sure, however, that those which have been cited, although no one of them resembles closely the case at bar, sufficiently instruct us in the principles on which the present case depends.

In the light of these cases I can repeat with absolute confidence that if the legislature of this state framed the provisions of the act of April, 1882, which relate to merchants and sample merchants, in the intention to discriminate against non-residents in favor of residents, and against goods in other states sold by sample here in favor of goods held here for sale; and if they succeeded in this intention by legislation having that practical effect; and if these facts appear to the court from the terms and tenor of the law, or are brought to its comprehension and conviction in a legal and conclusive manner,—then such provisions are null and void, and all arrests and prosecutions under them illegal. It is also to be considered that all this is to appear affirmatively, for no principle is better settled than that announced by Chief Justice Marshall in *Brown* v. *Maryland*, 12 Wheat. 436, that the "presumption is in favor of every legislative act, and the whole burden of proof lies on him who denies its constitutionality."

Now the most careful scrutiny will fail to show anything in the text of the law of Virginia relating to merchants and sample merchants which reveals a discrimination in favor of residents against non-residents. If the law does discriminate between such classes it does so, not in language, not in express terms, but only by its practical effect. The law makes no use anywhere of the terms "resident" and "non-resident," except in one of the sections concerning sample merchants, to declare that its provisions shall apply indiscriminately to residents and non-residents. If this law, therefore, does make the discrimination complained of, the fact is to be discovered by considering its effect, and by inferences from its general aim and purpose, and is not derivable, as in *Ward* v. *Maryland; Welton* v. *Missouri; Webber* v. *Virginia; Woodruff* v. *Parham*, and the other cases which have been cited, from its terms and language.

In order to fix this vice upon the law, it is almost if not absolutely necessary to assume that the licensed merchant which it taxes must in every instance be a resident, and that the sample merchant must be a non-resident; for the objection urged in argument against the law is that it discriminates against sample merchants in favor of merchants. This discrimination the legislature had a right to make; just as much right as it has to require a license tax from a merchant for the privilege of carrying on his business, while requiring no such tax from the farmer. So the legislature has a right to discriminate between a merchant and a sample merchant by taxing the business of the one lightly, while taxing that of the other heavily; or taxing one heavily and taxing the other not at all. The state is sovereign mistress of her own policy in determining what classes she shall lay a license tax upon, and what classes she shall exempt from such taxation; and in deciding how lightly or heavily she shall make this sort of taxes. She cannot, it is true, in exercising this sovereign function, discriminate, either expressly or practically, against non-residents in favor of residents, or against property in other states sold here, in favor of property held in this state for sale.

And therefore it seems to me that it is essential to the petitioner's case for the fact to be that merchants licensed under this law must necessarily be residents and that sample merchants licensed under it must necessarily be non-residents. No proof has been adduced to show that these two propositions are true. My own reason teaches me that merchants of other states may establish branch houses in this state without becoming residents; and also that residents of the state may, from stocks of goods in warehouse, sell by sample

through the instrumentality of sample agents without engaging in business in the ordinary way of merchants. It seems to me that the assumption that a merchant is necessarily a resident, and that a sample merchant is necessarily a non-resident, is an arbitrary one, not sustained by proof, and one which a court of justice has no right, by mere inference, to accept as true.

But even if this were a fact there is no proof or evidence, or showing of any sort, that the taxation imposed by the state on sample merchants is greater than that imposed on merchants in respect to to sales by sample. I do not pretend that it was incumbent upon the legislature to equalize the taxes upon these two classes; but even if it was, I have already said that the law seems to have proceeded upon the estimate that each additional sample agent after the first will probably sell goods to the amount of $50,000. If this was the purpose and hypothesis of the legislature, then, by taxing the sample agent $50, and taxing the merchant for each additional $50,000 of goods sold by him or his agents the same amount of $50, the law seems practically to have equalized the tax upon the two classes, and no discrimination results. If this were the endeavor and theory of the legislature, then the courts must accept and enforce its scheme of taxation, unless it be demonstrated by proof, or brought to its cognizance in some other legal way, that the scheme is vicious by reason of the practical inequality and discrimination resulting from it between residents and non-residents. No proof whatever has been furnished in this case of such effect of this law, and I am bound to consider that the legislature, representing the practical business of the state, acted judiciously in the discharge of this part of its appropriate duties. Is the opinion of one judge, in such a complex matter as this, involving facts rather than principles of law, the judge being uninformed by any proof or evidence whatever, and the matter relied upon not being apparent in the statute or in the record of the case before him, to prevail against the action of a deliberative body, well informed upon the matters dealt with, and immediately representing the practical business of the state?

The truth is that the case before me turns upon facts *in pais*, facts not found in the statute or the record, rather than upon any doubtful principles of law. The principles of law are well settled; it is only the facts which are in doubt. I do not believe the fact to be that there is any violent difference between the tax imposed upon the sample merchant and that imposed upon such merchants as are empowered to sell by sample. Even if a discrimination were made by

law between these two classes of merchants, it is one which the legislature had a right to make, unless, in doing so, it intended and practiced a discrimination between residents and non-residents; and I do not think it did, for I am not bound to believe, and, in fact, do not believe, that merchants are necessarily residents and sample merchants non-residents. I can derive no conclusion that they are from the law itself, or from any facts of which I can take judicial cognizance; and no proof whatever has been adduced, either in the form of affidavits or other evidence, that these two classes are respectively residents and non-residents.

Repeating that it is only those clauses of sections 27, 28, 31, and 32, of the act of April 22, 1882, which bear upon the case of the petitioner, that I have considered, and that my ruling embraces them alone, I am of opinion that they are not repugnant to any provision of the constitution of the United States, either in form or effect, and that this court has no right to discharge the petitioner from arrest. He must, therefore, be remanded to the custody of the sergeant of Norfolk.

The following is an abstract of the law brought in question in the foregoing decision :

*"License and Tax Act of the General Assembly of Virginia.  Approved April 22, 1882.*
## "MERCHANTS.

"Sec. 27. Every merchant shall pay a license tax for the privilege of transacting business in this state, to be graduated by the amount of purchases made by him during the period for which his license is granted. * * *

"Sec. 28. On every license to a merchant or mercantile firm the tax to be paid shall be graduated as follows: If the amount of purchases shall not exceed $1,000, the tax shall be $5; where purchases do not exceed $2,000, the tax shall be $10; and for all purchases over $2,000, and less than $50,000, there shall be a tax of 40 cents on the $100; and upon all purchases over $50,000 there shall be a tax of 10 cents on every $100 in excess of $50,000. * * *

### "SAMPLE MERCHANTS.

"Sec. 31. Any person who shall sell, or offer to sell, any description of goods, wares, or merchandise by sample, card, description, or other representation, verbal or otherwise, or any agent for the sale or collection of orders by sample or description list, * * * shall be deemed to be a sample merchant. It shall not be lawful for any person or persons to sell, or offer to sell, any description of goods, wares, or merchandise without first having obtained a license therefor from the commissioner of some county or corporation, which license shall grant the privilege to sell anywhere in the state, and shall be valid one year from the date of its issue; but if used out of the county or corporation where granted, the clerk of the court of such county or corporation shall certify thereon, with the seal of the court affixed, that the officer sign-

ing the said license is really the commissioner of the revenue for the district wherein the license issued, and that his signature is believed to be genuine: provided, that it shall not be lawful for the clerk of any county or corporation to furnish any certificate relating to the grant of a license other than in the manner authorized and directed by this section. Such license thus obtained shall be a personal privilege, and shall not be transferable, nor any abatement in the tax thereon allowed. No county, city, or town shall have the right to levy or collect a tax on sample merchants. Any person or persons who shall sell, or offer to sell, in violation of this act, shall pay a fine of $300 for the first offence, and $500 for each succeeding offence; the informer to receive one-half of the fine so collected. Nothing in this section shall be construed to allow sample merchants to sell to any person other than a manufacturer or licensed merchant, keeper of an ordinary or eating-house, without taking out the additional license required of merchants. * * *

### "TAX ON SAMPLE MERCHANTS.

"Sec. 32. The specific license tax for the privilege of selling by sample, card, description, or other representation, shall be $250, and any sample merchant who shall permit any person, except a duly-authorized agent or salesman, to sell under his license otherwise than for his exclusive use and benefit, shall pay a fine of $50 for each offence. No agent or salesman shall be permitted to sell, or offer to sell, as aforesaid, except he have with him at the time the license granted to the person for whom he acts, and a duly-executed power of attorney from said person constituting him his agent or salesman for the time being. Additional salesmen may be allowed under the following restrictions: For each additional agent or salesman employed to sell as aforesaid there shall be an additional tax of $50; and the said additional agent or salesman shall not be permitted to sell, or offer to sell, as aforesaid, except he have with him at the time a copy of the license granted to the person for whom he acts, duly certified to by the clerk of the court from which the license was issued, under the seal of said court, and certificate from the treasurer of the county, city, or town wherein the license was obtained, and that the additional tax required by this act has been paid, which said certificate and power of attorney shall be exhibited whenever required by any officer of the law or private citizen. * * * Nothing in this or the preceding section shall be construed to require any licensed merchant or manufacturer who has paid a license tax of not less than $250 to pay an additional tax for selling, or offering to sell, by sample, either by himself or agents." * * *

## NOTE.

STATE LICENSE TAX. Under the provisions of the constitution of the United States, article 1, creating the legislative power of the general government and restricting the legislative power of the several states, it has been judicially decided that a tax on sales is a tax on the proceeds, and not on the imports.(a) Requiring a license for non-resident traders to vend foreign merchandise is not a tax on imports or exports,(b) nor is a provision requiring

(a) State v. Pinckney, 10 Rich. 474. See Cook v. Pennsylvania, 97 U. S. 566.

(b) Sears v. Commissioners, 36 Ind. 267; In re Rudolph, 2 Fed. Rep. 65.

hawkers and peddlers to take out a license.(c)   A license for the sale of goods, if imposed on all persons engaged in the same business, is not inconsistent with this provision;(d) but a license tax discriminating against products of other states is in conflict;(e) so a state cannot impose a license tax on a traveling agent from other states.(f)   A state cannot impose on products of another state brought in for sale or use a more onerous burden or tax than upon like products of its own territory;(g) but an annual tax on all peddlers of a certain class selling by sample is a tax on all, irrespective of the place of the production of the material or the manufacture, and is not a violation of the constitution.(h)   A state may levy a tax on business and persons within its limits;(i) so it may tax professions, occupations, and trades;(j) and such license acts are not unconstitutional.(k)   Congress may regulate licenses to carry on trade within a state for internal revenue purposes, yet the power of the state to tax, control, or regulate the business is not incompatible;(l) so although letters patent grant exclusive rights to make and vend, yet the state may regulate the use of that right as to merely internal commerce or police.(m)   The United States licenses will not warrant carrying on a business in violation of a state law.(n)   State prohibitory laws are operative against such licenses;(o) so a license under the internal revenue act is no bar to an indictment under a state law.(p)   The state may regulate the sale of intoxicating liquors,(q) and require a license for the same,(r) or prohibit the sale altogether.(s)   A tax law taxing the selling of intoxicating liquors is inoperative only so far as it discriminates against imported wines and beer.(t)   Cities may exercise all powers constitutionally conferred on them.(u)   A city ordinance regulating the sale of intoxicating liquors is not unconstitutional;(v) and giving a license by a municipal corporation is not

(c) Com. v. Ober, 12 Cush. 493.

(d) Dist. of Columbia v. Humason, 2 McArth. 1.2.

(e) Ward v. Maryland, 12 Wall. 430; Woodruff v. Parham, 8 Wall. 123; Welton v. State, 91 U. S. 275; State v. North, 27 Mo. 464; but see Davis v. Dashiel, Phill. (N. C.) 114; Guy v. Baltimore, 100 U. S. 434; Tiernan v. Rinker, 102 U. S. 123.

(f) Welton v. State, 91 U. S. 275; State v. Browning, 62 Mo. 591.

(g) Guy v. Baltimore, 100 U. S. 434.

(h) Machine Co. v. Gage, 100 U. S. 676.

(i) Nathan v. Louisiana, 8 How. 73.

(j) Nathan v. Louisiana, 8 How. 73; State v. North, 27 Mo. 464; Biddle v. Com. 13 Serg. & R. 405.

(k) License Cases, 5 How. 504.

(l) License Tax Cases, 5 Wall. 462.

(m) Patterson v. Kentucky, 11 Chi. Leg. News, 183.

(n) License Tax Cases, 5 Wall. 462; McGuire v. Com. 3 Wall. 387; Pervear v. Com. 5 Wall. 475.

(o) Thurlow v. Massachusetts, 5 How. 504; McGuire v. Com. 3 Wall. 387; License Tax Cases, 5 Wall. 462; Pervear v. Com. 5 Wall. 430; Bertholf v. O'Reilly, 18 Am. L. Reg. (N. S.) 119;

Metrop. Bd. of Excise v. Barrie, 34 N. Y. 657; People v. Coleman, 4 Cal. 46.

(p) Pervear v. Com. 5 Wall. 480; Com. v. Owens, 114 Mass. 252.

(q) Bartemeyer v. Iowa, 18 Wall. 129; Gloversville v. Howell, 70 N. Y. 287; O'Dea v. State, 57 Ind. 31.

(r) License Cases, 5 How. 594; State v. Wheeler, 25 Conn. 290; Perdue v. Ellis, 18 Ga. 586; Ingersoll v. Skinner, 1 Denio, 540; Jones v. People, 14 Ill. 196; Santo v. State, 2 Iowa, 165; State v. Donehey, 8 Iowa, 396; Corwin v. Kimball, 41 Mass. 359; Corwin v. Clapp, 71 Mass. 97; Keller v. State, 11 Md. 525; State v. Moore, 14 N. H. 451; State v. Peckham, 3 R. I. 289; City v. Ahrens, 4 Strob. 241.

(s) Bertholf v. O'Reilly, 18 Am. L. Reg. (N. S.) 119; Metrop. Bd. of Excise v. Barrie, 34 N. Y. 657; Bartemeyer v. Iowa, 18 Wall. 129; Beer Co. v. Massachusetts, 97 U. S. 25.

(t) Tiernan v. Rucker, 102 U. S. 123.

(u) Logansport v. Seybold, 59 Ind. 225.

(v) License Tax Cases, 5 How. 624; Downing v. Alexandria, 10 Wall. 173; Reall v. State, 4 Blatchf. 107; Lunt's Case, 6 Me. 412.

a regulation of commerce,(*w*) nor a violation of the constitution,(*x*) even though the business extends beyond the limits of the state.(*y*)

PRIVILEGES AND IMMUNITIES. These expressions, as used in article 4, § 2, of the constitution of the United States, are confined to those privileges and immunities which are in their nature fundamental,(*a*) such as protection by the government; the enjoyment of life and liberty; the right to acquire and possess property, and to pursue and obtain happiness and safety, subject to such restraints as the government may justly prescribe for the general good;(*b*) such privileges and immunities as belong to general citizenship,(*c*) including the right to pass freely into and through any state for the purposes of commerce, trade, residence, etc.,(*d*) the right to pursue a lawful employment in a lawful manner, and to be exempt from any higher taxes or excises than those imposed on its own citizens.(*e*) Congress cannot grant privileges to citizens of one state over those of another, and cannot give a state the power to do so.(*f*) Where the laws differ, a citizen of one state claiming rights in another must claim according to the laws of that state and not of his own.(*g*) Citizens do not by this clause acquire any peculiar privileges in another state except upon the condition on which they may be held or enjoyed by the citizens of such other state.(*h*) The main object of this clause was to prevent each state from discriminating in favor of its own people, or against those of any other state;(*i*) but it is not intended to secure the citizens of any state against discriminations made by their own state in favor of citizens of other states, nor of one class against another class of citizens of the same state.(*j*) A state law imposing a discriminating tax on non-resident traders is void,(*k*) but the property of a non-resident may be taxed equally with that of a resident.(*l*) A tax on those who sell goods brought into the state and not owned by residents is valid.(*m*) A license on the sale of goods by non-resident traders is valid if there is no discrimination;(*n*) so a license required to vend foreign merchandise is valid,(*o*) or for all articles except those manufactured by themselves within the limits of the state.(*p*)—[ED.

(*w*) Chilvers v. People, 11 Mich. 43; People v. Babcock, 11 Wend. 536.

(*x*) Home Ins. Co. v. Augusta City, 93 U. S. 116.

(*y*) Osborne v. Mobile, 16 Wall. 482; and see Home Ins. Co. v. Augusta City, 93 U. S. 116.

(*a*) Corfield v. Coryell, 4 Wash. C. C. 380.

(*b*) Ward v. Maryland, 12 Wall. 430; Slaughterhouse Cases, 16 Wall. 76; Corfield v. Coryell, 4 Wash. C. C. 380; Bennett v. Boggs, Bald. 60; Com. v. Milton, 12 B. Mon. 212; Campbell v. Morris, 3 Har. & McH. 535; Ward v. Morris, 4 Har. & McH. 330; State v. Medbury, 3 R. I. 142; Live Stock Co. v. Crescent City, 1 Abb. (U. S.) 398.

(*c*) Scott v. Sanford, 19 How. 580.

(*d*) Ward v. Maryland, 12 Wall. 430; Crandall v. Nevada, 6 Wall. 49; Lemmon v. People, 20 N. Y. 607; Ex parte Archy, 9 Cal. 14*f*; Willard v. People, 5 Ill 461; Julia v. McKinney, 3 Mo. 270; State v. Medbury, 3 R. I. 142.

(*e*) Ward v. Maryland, 12 Wall. 430; Wiley v. Parmer, 14 Ala. 627; Oliver v. Washington Mills, 11 Allen, 268.

(*f*) Chapman v. Miller, 2 Speer, 769.

(*g*) Lemmon v. People, 20 N. Y. 562.

(*h*) Paul v. Virginia, 8 Wall. 168; R ynolds v. Geary, 26 Conn. 179; Com. v. Milton, 12 B. Mon. 212; Lemmon v People, 20 N. Y. 562.

(*i*) Davis v. Pierce, 7 Minn. 13; Paul v. Virginia, 8 Wall. 168; Ward v. Maryland, 12 Wall. 418; Williams v. Bruffy, 96 U. S. 183; Corfield v. Coryell, 4 Wash. C. C. 371; Lemmon v. People, 20 N. Y. 608.

(*j*) Com. v. Griffin, 3 B. Mon. 208; Bradwell v. State, 16 Wall. 138.

(*k*) Ward v. Maryland, 12 Wall. 418; Wiley v. Parmer, 14 Ala. 627; Osborne v. Mobile, 16 Wall. 482; Mobile v. Kimball, 102 U. S. 691; Welton v. Missouri, 55 Mo. 288; State v. Browning, 62 Mo. 591; Webber v. Virginia, 103 U. S. 344.

(*l*) Duer v. Small, 4 Blatchf. 263; Battle v. Corporation, 9 Ala. 234.

(*m*) People v. Coleman, 4 Cal. 46.

(*n*) Woodruff v. Parham, 8 Wall. 123; Hinson v. Lott, 8 Wall. 148; Mount Pleasant v. Clutch, 6 Iowa, 516; In re Rudolph, 2 Fed. Rep. 65.

(*o*) Sears v. Commissioners, 36 Ind. 267.

(*p*) Seymour v. State, 51 Ala. 52.