NICHOLAS V. HALTER ET AL. V. STATE OF NEBRASKA.*

FILED OCTOBER 19, 1905. No. 13,955.

1. **Legislative Power:** USE OF FLAG. The power to prohibit the use
   of the national flag does not belong exclusively to the federal
   congress, but may be exercised by the several states.

2. **Constitutional Law.** Chapter 139, laws 1903, entitled "An act to
   prevent and punish the desecration of the flag of the United
   States" is not obnoxious to the fourteenth amendment to the
   constitution of the United States, nor to the provisions of the
   state constitution against depriving any person of his property
   without due process of law, and against special or class legis-
   lation.

3. **Police Power.** Notwithstanding the fourteenth amendment to the
   federal constitution, the state in the exercise of the police power
   may enact such laws as are calculated to promote the health,
   comfort, safety and welfare of society, although such laws operate
   to restrict the liberty of citizens of the United States.

4. **Courts:** CONSTITUTIONAL QUESTIONS. But whether legislation thus
   operating is in fact calculated to promote such ends is a legiti-
   mate subject of inquiry by the court, when the constitutionality
   of the act is assailed.

5. **Statutes:** VALIDITY. An act which is calculated to foster sentiments
   of patriotism is not vulnerable to the objection that it is not
   calculated to promote the welfare of society.

ERROR to the district court for Douglas county: ED-
MUND M. BARTLETT, JUDGE. *Affirmed.*.

*Cooper & Dunn* and *S. R. Rush,* for plaintiffs in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,*
contra.

ALBERT, C.

The defendant was convicted of a violation of the statute
entitled "An act to prevent and punish the desecration
of the flag of the United States." Laws 1903, ch. 139.

It is conclusively established that the defendants were

* Affirmed, 205 U. S. 34.

engaged in selling intoxicating liquors at retail, and sold
and offered for sale beer contained in bottles, to which
was attached a label on which there was printed a repre-
sentation of the flag of the United States, and that such
label was so used to advertise the beer and distinguish
it from other products of a like nature. It is admitted
that the beer was sold to the defendants by a brewing
company in the bottles thus labeled, and that the repre-
sentation of the flag thereon is a part of the registered
trade mark of the brewing company. It is now claimed
that the statute under which the defendants were con-
victed is unconstitutional, and consequently that the judg-
ment of conviction must be reversed. The statute is as
follows:

Section 1. "Any person who in any manner, for ex-
hibition or display, shall place, or cause to be placed,
any word, figure, mark, picture, design, drawing, or any
advertisement of any nature, upon any flag, standard,
color, or ensign, of the United States of America, or shall
expose or cause to be exposed to public view any such
flag, standard, color, or ensign, upon which shall be
printed, painted, or otherwise placed, or to which shall
be attached, appended, affixed, or annexed, any word, fig-
ure, mark, picture, design or drawing, or any advertise-
ment of any nature, or who shall expose to public view,
manufacture, sell, expose for sale, give away, or have in
possession for sale, or to give away or for use for any
purpose, any article, or substance, being an article of
merchandise, or a receptacle of merchandise upon which
shall have been printed, painted, attached, or otherwise
placed, a representation of any such flag, standard, color,
or ensign, to advertise, call attention to, decorate, mark,
or distinguish, the article, or substance on which so placed,
or who shall publicly mutilate, deface, defile, or defy,
trample upon, or cast contempt, either by words or act,
upon any such flag, standard, color, or ensign, shall be
deemed guilty of a misdemeanor, and shall be punished by
a fine not exceeding one hundred dollars, or by imprison-

ment for not more than thirty days, or both, in the discretion of the court."

Section 2. "The words flag, color, ensign, as used in this act shall include any flag, standard, ensign, or any picture or representation, or either thereof, made of any substance, or represented on any substance, and of any size, evidently purporting to be, either of, said flag, standard, color or ensign, of the United States of America, or a picture, or a representation, of either thereof, upon which shall be shown the colors, the stars, and the stripes, in any number of either thereof, or by which the person seeing the same, without deliberation may believe the same to represent the flag, color, standard, or ensign, of the United States of America."

Section 3. "This act shall not apply to any act permitted by the statutes of the United States of America or by the United States army and navy regulations, nor shall it be construed to apply to a newspaper, periodical, book, pamphlet, circular, certificate, diploma, warrant, or commission of appointment to office, ornamental picture, article of jewelry, or stationery for use in correspondence, on any of which shall be printed, painted, or placed, said flag, disconnected from any advertisement."

The defendants take the position that the act contravenes section 1 of the fourteenth amendment to the federal constitution, which prohibits the states from making or enforcing any law which shall abridge the privileges or immunities of citizens of the United States, or which shall deprive any person of life, liberty or property without due process of law, and the provisions of the state constitution against special or class legislation. This position is supported by two cases. *Ruhstrat v. People,* 185 Ill. 133, 49 L. R. A. 181, and *People v. Van De Carr,* 178 N. Y. 428, 70 N. E. 965. In each of these cases a statute substantially like the one under consideration was held unconstitutional. The Illinois case rests on three propositions, which for convenience we shall consider out of the order in which they are there discussed.

As to the first, namely, that the act is unconstitutional, "as depriving a citizen of the United States of the right of exercising a privilege impliedly, if not expressly, granted to him by the federal constitution," little need be said. The right to advertise whiskey, beer, tobacco and other articles of merchandise by the use of the national flag is certainly not the subject of an express constitutional grant, and it can be said to be impliedly granted only in the sense that, like an infinite number of other acts, it is not prohibited. If the fact that an act or course of action is not prohibited by the federal constitution gives a citizen of the United States a right which the state is powerless to abridge or restrict, the sphere of state legislation is more circumscribed than has been generally supposed, and our criminal code is largely waste paper. A moment's reflection would seem sufficient to show that the proposition is utterly unsound. Nor can we agree with counsel that the federal government has the exclusive power to regulate the use of the national flag. It is not infrequent that the same act is an offense against both the state and federal goverments. Counterfeiting furnishes an apt illustration. The power "to provide for the punishment of counterfeiting the securities and current coin of the United States" is expressly given to congress, but the offense is also punishable under the laws of the several states, the validity of which was upheld in *Fox v. State,* 5 How. (U. S.) 410.

The second proposition to be noticed is that "the act is also unduly discriminating and partial in its character." This proposition is based on the exceptions to the general provisions of the act. The exceptions enumerated in the Illinois act are fewer than in our own, but we do not think it can fairly be said that in either case they render the act unduly discriminating or partial. Neither act is aimed against any individual or class of individuals, but against certain acts. If it were competent for the legislature to deal with the subject, it was clearly competent for it to define the crime of desecration, and to specify

the acts constituting the offense.    Every use of the flag
not included in such definition or specification would be
impliedly excepted from the operation of the act, and it
would seem wholly immaterial that the legislature saw
fit to make some acts the subject of an express exception,
instead of narrowing the definition of the crime, or the
specification of the acts constituting it, in such a way as
to exclude the acts included in such exception.    Besides,
there is nothing in the state or federal constitution which
forbids the classification of subjects for legislation, so
long as the classification is not arbitrary.    *Lancashire Ins.
Co. v. Bush,* 60 Neb. 116, and cases cited.    There this court
held that the statute providing for the taxing of an attor-
ney's fee against a defeated insurance company was valid
legislation.    See also *Rosenbloom v. State,* 64 Neb. 342;
*State v. Montgomery,* 92 Me. 433, 43 Atl. 13; *Ex parte
Thornton,* 12 Fed. 538; *Davis v. State,* 51 Neb. 301.    In
this instance, the classification does not appear to be an
arbitrary, but a most natural one.    It is a matter of com-
mon knowledge that the use of the flag for advertising pur-
poses offends the sensibilities of a large portion of our peo-
ple.    The statute is directed against the use of the flag
for that purpose, but excepts from its provisions certain
uses to which the most sensitive could not object.    With-
out such exception, either express or implied, the statute
would be oppressive, if not absurd.

We come now to the remaining proposition on which
the Illinois case rests, namely, that the statute is an in-
fringement upon the personal liberty guaranteed by the
state and federal constitutions.    The court in that case
recognizes the right of the state, in the exercise of its
police power, to enact such laws as are calculated to pro-
mote the health, comfort, safety and welfare of society,
although such laws may operate as an infringement upon
the personal liberty of the citizen, but holds that such
laws must be in fact calculated to promote those objects,
or some of them; otherwise, they are an arbitrary restraint
on the citizen and unconstitutional.    Such is the gen-

erally accepted doctrine. *Lochner v. New York,* 198 U. S. 45, 25 Sup. Ct. Rep. 539, contains a discussion of the police power of the states, and an examination of many cases bearing on the subject. After a somewhat lengthy discussion of the doctrine just referred to, the court in *Ruhstrat v. People, supra,* held that the statute was not calculated to promote any of the objects just enumerated, and was therefore unconstitutional and void. Again, we find ourselves unable to agree with a court to whose opinions, ordinarily, we attach great weight. Patriotism has ever been regarded as the highest civic virtue, and whatever tends to foster that virtue certainly makes for the common good. That familiarity breeds contempt has the force of a maxim. That contempt or disrespect for an emblem begets a like state of mind toward that for which it stands is a psychological law which underlies the canons against profanation which abound in every system of religious instruction. Such inhibitions against the irreverent use of sacred things are not mere arbitrary fulminations, but are grounded on sound practical considerations and the conviction that such use of the sacred emblems of religion is inimical to the cause of religion itself. The legislation under consideration may be justified on the same principle. The flag is the emblem of national authority. To the citizen it is an object of patriotic adoration, emblematic of all for which his country stands—her institutions, her achievements, her long roster of heroic dead, the story of her past, the promise of her future; and it is not fitting that it should become associated in his mind with anything less exalted, nor that it should be put to any mean or ignoble use.

Moreover, that the citizen resents any improper use of the flag of his country, and that his resentment is frequently carried to the extent of a breach of the peace, are matters of common knowledge. The state has the undoubted right to legislate in the interest of the public peace. As was said in *Updegraph v. Commonwealth,* 11 Serg. & Rawl. (Pa.) 406:

"An offense against the public peace may consist either of an actual breach of the peace, or doing that which tends to provoke and excite others to do it. Within the latter description fall all acts and all attempts to produce disorder, by written, printed, or oral communications, for the purpose of generally weakening those religious and moral restraints, without the aid of which mere legislative provisions would prove ineffectual."

The doctrine announced in that case seems peculiarly applicable to the case in hand, and to justify the act in question as a valid exercise of the police power of the state. In *People v. Van De Carr, supra,* the act was not held wholly void, but only in so far as it applies to articles manufactured and in existence when the act went into effect. To that extent it was held unconstitutional as in contravention of the constitutional provision that no person shall be deprived of life, liberty or property without due process of law. If the statute is vulnerable to that objection, it would seem that a large number of our penal statutes, commonly regarded as valid, must fall by the same rule. When our act against taking fish with a seine went into effect, there were doubtless many seines manufactured and in existence. The same may be said of swivel guns, when the act making it unlawful to kill certain wild water-fowl with such guns became a law. But to our knowledge it has never been seriously claimed that either of such acts is unconstitutional and void to the extent that it applies to "articles manufactured and in existence when the act went into effect." By sweeping prohibitory legislation, those engaged in the manufacture and sale of intoxicating liquors were put out of business in the state of Kansas, and property whose chief value consisted in its use in connection with the manufacture and sale of such liquors was rendered practically valueless. The validity of this legislation was assailed on the ground that it operated to deprive those engaged in the traffic in intoxicating liquors of their property without due process of law. *Mugler v. Kansas,* 123 U. S. 623. Considering that feature of the case, the court said:

"Lawful state legislation, in the exercise of the police powers of the state, to prohibit the manufacture and sale within the state of spirituous, malt, vinous, fermented, or other intoxicating liquors, to be used as a beverage, may be enforced against persons who, at the time, happen to own property whose chief value consists in its fitness for such manufacturing purposes, without compensating them for the diminution in its value resulting from such prohibitory enactments."

Nor does the fact that the flag was a part of the trade-mark of the brewing company place the defendants in any more favorable position. To the extent that the trade-mark is property, it comes within what has already been said. A patent or trade-mark puts no restraint upon the state in the exercise of its police power beyond the restraint imposed with respect to property generally. *Patterson v. Kentucky*, 97 U. S. 507.

We have gone over the act in the light of excellent briefs on either side and have reached the conclusion that it is not only a valid piece of legislation, but one well calculated to promote the common weal.

It is therefore recommended that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.