## STATE *vs.* WILLIAM C. MONTGOMERY.

### Franklin.    Opinion January 27, 1899.

*Pleading. Hawkers and Pedlers. License. Exemptions. Constitutional Law. Stat. 1889, c. 298; 1893, c. 282 and c. 386. Mass. Anc. Chart. c. 21, § 5. R. S., c. 6, § 1, par. VIII; c. 24, § 3; c. 144.*

In a complaint for going from place to place, exposing for sale pictures and picture frames, without being licensed therefor under the Laws of 1889, chapter 298, relating to Hawkers and Pedlers, the exceptions in the enacting clause of the statute are sufficiently negatived by the use of the expression "other than such as he is by the statutes allowed to grow for sale and expose for sale without a license."

Another employee of the defendant's employer had solicited and secured from citizens in the state orders for the enlargement of pictures. With each customer he left a contract, stating that the picture will be delivered in an appropriate frame, which the customer is advised, but not compelled, to buy. When the pictures were completed, they were returned to this State, accompanied by frames adapted to the size of the enlarged pictures. The defendant in the course of his employment, received the pictures and frames. He then delivered the pictures, going to each customer who had given an order, and taking to each, his picture, which the defendant had placed in one of the frames that had accompanied the pictures. At the time of delivery, he offered for sale, exposed for sale, and endeavored to sell, a frame to each person who had ordered a picture. He called upon no other parties, and made no attempt to sell otherwise. He had no license to peddle in this State.

*Held;* that the defendant's acts were sufficient to constitute the crime of peddling picture frames without a license.

The Hawkers and Pedlers' Act, Laws of 1889, chap, 298, is constitutional.

ON REPORT.

This was a complaint made in the Farmington Municipal Court under the Hawkers and Pedlers Act of 1889, c. 298, as amended by Stat. 1893, c. 282, and c. 386, in which the material averments were as follows:—"that W. C. Montgomery commorant at Farmington, within the county of Franklin at Farmington, on the fifteenth day of January, A. D. 1898, then and there without any authority, license or permission therefor, did go about from place to place in said town of Farmington, then and there carrying for sale and exposing for sale, goods, wares and merchandise other than

such as he is by the statutes allowed to carry for sale and expose for sale without a license, to wit: pictures and picture frames; the said W. C. Montgomery not being then and there exempt from obtaining a license to carry for sale and expose for sale, said goods, wares and merchandise, to wit: pictures and picture frames; against the peace of the State, etc."

The defendant having been convicted, thereupon appealed to this court at nisi prius; and the case, which is stated in the opinion, was reported by the presiding justice upon an agreed statement of facts.

*E. E. Richards*, County Attorney, for State.

*Jos. C. Holman*, for defendant.

If defendant was a pedler then the statute in question exempts parties from selling various kinds of goods and chattels such as fruit grown in the United States, fruit trees, brooms, etc., and various products of a man's own labor or of his family, etc.  Such a distinction is arbitrary and renders the statute void.  *State ex rel. Luria* v. *Wagener*, (Minn.) N. W. Rep. vol. 72, No. 1, August 7, 1897.

The statute in question by § 6 discriminates between its own citizens and however commendable it may be in the legislature which passed the law, and however much we may favor the sentiments expressed in the section, which everybody does, it is a discrimination among its own citizens and renders the whole law in question void, for a state cannot pass laws discriminating in favor of one class and against another.  13 Am. & Eng. Ency. p. 520.

Defendant was agent of a foreign corporation.  He was delivering pictures on orders previously taken.  He sold frames for the pictures when those who had ordered the pictures desired them. It was practically one and the same transaction.  He called upon no one except those who had ordered pictures enlarged or made copies in accordance with the contract with the advance agent or advertising solicitor.  The delivery of the pictures and the sale of the frames were practically one transaction in accordance with the original order and the acceptance of the same by the corporation

in Chicago.    *Brennan* v. *City of Titusville*, 153 U. S. 289, and cases cited.

The statute discriminates against goods brought from foreign countries and is void upon that ground.    *State* v. *Furbush*, 72 Maine, 493, and cases cited.

The complaint is not sufficient.    Respondent could do all the complaint says and still not violate any statute.    It does not negative the fact but what the goods were the product of his own labor or the labor of his family, or a patent of his own invention, etc.    That is, it does not enumerate the excepted articles in the statute.    *State* v. *Godfrey*, 24 Maine, 232; *State* v. *Keen*, 34 Maine, 500; *State* v. *Hutchinson*, Id. 500; *Bohanan* v. *Pope*, 42 Maine, 93; *State* v. *Gurney*, 37 Maine, 149; *State* v. *Philbrick*, 31 Maine, 401.

Counsel also cited *State of Tennessee* v. *Scott*, 14 Pickle, 254; *State* v. *Coop*, (So. Car.) 30 S. W. Rep. 609, July 5, 1898.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WISWELL, SAVAGE, JJ.

SAVAGE, J.    Complaint against defendant for going from place to place in the town of Farmington, exposing for sale pictures and picture frames, without being licensed therefor under the Laws of 1889, c. 298, relating to Hawkers and Pedlers.    It is averred in the complaint that these pictures and picture frames are "goods, wares and merchandise other than such as he [defendant] is by the statutes allowed to carry for sale and expose for sale, without a license."    This case comes up in the form of a report upon facts agreed, and we are called upon to determine (1) the sufficiency of the complaint; (2) whether the facts agreed upon are sufficient to show that the crime charged in the complaint has been committed; and (3) whether the Hawker and Pedler statute is constitutional.

I.    It is objected that the complaint is insufficient in that it fails to negative certain exceptions contained in the enacting clause of the statute under which it is brought.    The articles excepted, and which may be peddled without a license, are "fruit grown in

the United States, fruit trees, provisions, live animals, brooms, agricultural implements, fuel, newspapers, books, pamphlets, agricultural products of the United States, the product of his [pedler's] own labor, or the labor of his family, any patent of his own invention, or in which he has become interested by being a member of any firm, or stockholder in any corporation which has purchased the patent." Sect. 1.

It is well settled in criminal pleading that it is necessary to aver all of the elements which constitute the crime and to negative all the exceptions contained in the enacting clause of the statute which describes or creates the offense. *State* v. *Godfrey,* 24 Maine, 232. But we think in this complaint the exceptions in the enacting clause of this statute are sufficiently negatived by the use of the expression, "*other* than such as he is by the statutes allowed to grow for sale and expose for sale without a license." The exceptions are the articles allowed to be peddled without license. The averment that the articles peddled in this case are "*other*" than those allowed by statute to be so peddled necessarily excludes the excepted articles, and is a sufficient negative of the exceptions. The precise language of the statute need not be negatived. It is sufficient if the words used reach the same result with equal certainty. *State* v. *Keen,* 34 Maine, 500.

II. It is next claimed that the facts agreed upon do not constitute an offense within the meaning of the statute. It appears that the defendant was an employee of the Chicago Portrait Company, a foreign corporation having its place of business at Chicago. The business of the Company was to make, reproduce, buy and sell pictures and pictorial reproductions, together with picture frames, and other articles pertaining to a general art business. About the middle of November, 1897, an employee of the company other than the defendant, solicited and secured from citizens of Farmington orders to the number of sixty for the enlargement of pictures. With each customer he left a contract, in which among other things it is stated that the picture will be delivered in an appropriate frame, which the customer is advised, but not com-

pelled, to buy. The prices of frames are given. When the pictures were completed, they were returned to Farmington by freight, addressed to the Chicago Portrait Company, and accompanied by twenty-seven frames adapted to the size of the enlarged pictures. The defendant, on presentation of a bill of lading and invoice, secured the pictures and frames. The defendant delivered the pictures so obtained, going to each customer who had given an order, and taking to each his picture, which the defendant had placed in one of the frames accompanying the pictures. And at the time of delivery, he offered for sale, exposed for sale, and endeavored to sell, a frame to each person who had ordered a picture. The defendant called on no parties except those who had given orders for pictures, and made no attempt to sell to any other parties. Both employees of the company resided without the state. The defendant had no license to peddle in this state. We think the acts of the defendant were sufficient to constitute the crime of peddling picture frames without a license. He went from place to place in Farmington. He carried these picture frames. He exposed them for sale. They were not within the "exceptions" in the statute. He had no license. Here seem to be all the elements of the statute offense. The fact that the frames were appropriate for the pictures which had been ordered, or that when the pictures were delivered they were encased in the frames, can make no difference. It is the same as if they were exposed separately, or at another time. The frames had not been previously ordered. The customers had made no previous contract to purchase picture frames, nor had the defendant's employer made any previous contract to sell picture frames. The selling or exposing for sale of picture frames was not incidental to the business of enlarging pictures, but was additional to it. The defendant had the frames in his possession to expose for sale, and then to sell if he could. This case differs from those relied upon by the defendant. In *Brennan* v. *Titusville*, 153 U. S. 289, Brennan, the agent of a foreign corporation, was complained of for violating a city ordinance which required all canvassers to be licensed by the mayor. The court held in that case that under the particular statute of Pennsylvania,

authorizing the ordinance, the license fee was a tax, and so under the facts of the case, a tax upon interstate commerce, and hence that the ordinance was void. But that is not this case. In *Commonwealth* v. *Ober*, 12 Cush. 493, the defendant in delivering, for his employer, goods previously ordered, sometimes delivered to customers goods of the same description in addition to those they had ordered. The court said: "It seems to us that the defendant was a carrier, delivering goods to persons who had previously ordered them, but who when the goods were brought desired to enlarge their order, or take more than they had previously ordered, upon the same terms in all respects, as to prices and credits. It was in effect a purchase of the same buyer from the same seller, of the same commodity, to a larger amount than previously ordered. It wants the essential characteristics of carrying about for sale, offering them to purchasers, fixing the prices and terms of sale, or receiving payment, and therefore their acts were not within the prohibition of the statute." Neither is that this case.

III. The final contention of the defendant is that the Hawkers and Pedlers Act, Laws of 1889, c. 298, is unconstitutional. It has been many times decided that it is within the province of the legislature to regulate the business of hawking and peddling by requiring those engaged in it to be licensed and to pay proper fees. Such has been the practice from the very earliest times in this country. Mass. Ancient Charters, c. 21, § 5. Licenses of this sort may be sustained on either or both of two grounds: 1. On the police power of a state for regulation; and 2, on the power of taxation for revenue. See cases cited in note to 52 Am. Dec. 331. We think the Hawker and Pedler Act of this State may fairly be said to be an exercise of the police power of the State, and being such, it is not in violation of any requirement that taxation shall be equal and uniform. See same cases. *Morrill* v. *State*, 38 Wis. 428, (20 Am. Rep. 12.)

As expressive of the reasons why it has been deemed advisable in times past to regulate the exercise of the business of hawkers, we quote from Jacob's Law Dictionary, title "Hawkers." "Those

deceitful fellows who went from place to place, buying and selling brass, pewter and other goods and merchandise, which ought to be uttered in open market; and the appellation seems to grow from their uncertain wandering, like persons that with hawks seek their game where they can find it." The object of such legislation has also been well stated by Baron Graham to be "to protect on the one hand fair traders, particularly established shop-keepers resident permanently in towns and other places, and paying rent and taxes there for local privileges, from the mischiefs of being undersold by itinerant persons to their injury; and on the other hand to guard the public from the impositions practiced by such persons in the course of their dealings." *Attorney General* v. *Tongue*, 12 Price, 51. So by Judge Cooley, "that the regulation of hawkers and pedlers is important if not essential, may be taken as established by the concurring practice of civilized states. They are a class of persons who travel from place to place among strangers, and the business may easily be made a pretense or a convenience to those whose real purpose is theft or fraud. The requirement of a license gives opportunity for inquiry into antecedents and character, and the payment of a fee affords some evidence that the business is not a mere pretense." *People of the City of Coldwater* v. *Russell*, 49 Mich. 617, (43 Am. Rep. 478). See also *Commonwealth* v. *Ober*, supra; and *Emert* v. *Missouri*, 156 U. S. 296; *State* v. *Express Co.*, 60 N. H. at page 260; *Huntington* v. *Cheesbro*, 57 Ind. 74; *Borough of Warren* v. *Geer*, 117 Pa. St. 207.

Nor is this statute susceptible of the interpretation that it discriminates in favor of goods manufactured in this state, and against goods manufactured in other states, as was the case of the statute in *State* v. *Furbush*, 72 Maine, 493. And it is not in that sense an interference with the power vested in congress to regulate commerce, and thus obnoxious to the federal constitution.

Nor is the license fee prescribed by the statute a tax upon interstate commerce. The statute has no reference to the business of soliciting orders for, or offering for sale, property situated without the state, to be followed by a transfer of the goods from one state to another, as was the case in *Brennan* v. *Titusville*, supra;

*Crutcher* v. *Kentucky*, 141 U. S. 47; *Robbins* v. *Shelby Co.*, 120 U. S. 489; *Corson* v. *Maryland*, 120 U. S. 502, all of which cases were cited by the defendant. The statute contemplates the business of an itinerant pedler, going about from place to place, having his goods with him, exposing them for sale, selling them. Unless he has them with him, he cannot expose them for sale; he cannot sell them, within the meaning of the statute. The goods, if ever without the state, were within the state when exposed for sale, and thus had ceased to be the subject of interstate commerce. By breaking the packages and traveling with them as an itinerant pedler, the owner or possessor had mixed them with the general property of the state. *Brown* v. *Maryland*, 12 Wheat. 419. The distinction is clearly pointed out in *Emert* v. *Missouri*, supra, at page 311. Emert was the agent of the Singer Mfg. Co., a New Jersey corporation, which had forwarded to him in Missouri the machines in question, and which it was alleged he unlawfully sold, in violation of the pedler's license law of that state. The court said : " There is nothing in this case to show that he (the pedler) ever offered for sale any machine that he did not have with him at the time. His dealings were neither accompanied nor followed by any transfer of goods, or of any order for their transfer *from one state to another;* and were neither interstate commerce within themselves, nor were they in any way directly connected with such commerce. The only business or commerce in which he was engaged was internal and domestic; and as far as appears, the only goods in which he was dealing had become part of the mass of property within the state. Both occupation and the goods, therefore, were subject to the taxing power and to the police power of the state."

The goods which this defendant is complained of for exposing for sale had been received by him within this state. He had broken the packages. He was traveling with them as a pedler. They had become a part of the general mass of property in the state. Hence a statute regulation of their sale would not be a regulation of interstate commerce.

Again, the defendant claims that the statute in question is in

violation of our own constitution, in that it discriminates between
citizens in this state. It is no objection that certain classes of
articles are excepted from its provisions. It is within the legisla-
tive discretion to say what goods may and what may not be
peddled without a license. But it is contended that it is not com-
petent for the legislature to exempt certain classes of persons from
the operation of the law and permit them to peddle without a
license, while all others must be licensed. Peddling is a lawful
business, and to peddle without a license was not at common law
an offense. The statute itself creates the offense. And the argu-
ment is that the legislature may not properly say that acts which
if committed by one person are a crime, if committed by another
are not a crime. It is undoubtedly true that police regulations of
this kind, to be valid, must be uniform, and must not discriminate
against one class and in favor of another. In other words, in an
act to regulate pedlers, all pedlers of the same kind, under the
same circumstances, must be regulated alike. It is a "natural,
inherent and inalienable right" of every man that he shall be sub-
ject only to the same burdens, limited only by the same restraints,
regulated only by the same laws, as is his neighbor, situated under
the same conditions as he is. Is this right abridged by this
statute? It is contended that the exception which permits one to
peddle without license "the products of his own labor, or the labor
of his family, any patent of his own invention, or in which he has
become interested by being a member of any firm, or stockholder
in any corporation which has purchased the patent," is a discrimi-
nation in favor of some and against others. We do not think so.
If one may peddle freely the products of his own labor, so may
all. The products may be unlike, but the freedom to prosecute
one's own business and to peddle his own products is free alike to
all. So of the other exceptions. While it may happen that vari-
ous producers may peddle each the product of his own labor with-
out license, but not of the labor of another, still we think this
fairly answers the requirements of uniformity. The legislature is
the sole judge of the extent to which the business of peddling
should be regulated, and its conclusions are final, so long as the

burdens, imposed do not bear unevenly upon citizens.   *Ex parte Thornton*, 12 Fed. Rep. 538.

But it is further contended that the statute is unconstitutional and void by reason of the provisions of section 6, which provides that: " Any soldier or sailor disabled in the war for the suppression of the rebellion, or by sickness or disability contracted therein or since his discharge from service, shall be exempt from paying the license fees required by this chapter." The defendant contends that this section creates an arbitrary, unlawful and unjust discrimination in favor of certain persons, and necessarily against others; that soldiers and sailors who served in the war of the Rebellion as a class have no connection with the business of peddling, or rather that they constitute no class, but are composed of all classes of citizens; and that to exempt such from any of the · provisions of the law is to select here one and there one of the citizens of the State and bestow upon them special privileges with which their former service in the army or navy has no connection; that there is no natural or reasonable ground for the exemption.   But it will be observed that. the soldiers and sailors are not exempted from the necessity of procuring license.   They, like all other applicants for license, must file in the office of the secretary of state " a certificate signed by the mayor of a city, or by the majority of the selectmen of a town, stating to their best knowledge and belief that the applicant therein named is of good moral character."   " The mayor or selectmen before granting such certificate shall require the applicant to make oath that he is the person named therein, and that he is a citizen of the United States."   Without such certificate of good moral character, not even the soldier or sailor can obtain a license to peddle.   Sect. 2.   The same restrictions are thrown around them as are thrown around all others.   The same safeguards are exacted from them as from all others.   They are exempted only from the payment of license fees.   And in this connection it must be noticed that this exemption is applicable only to soldiers and sailors who have become " disabled."   It is not general.   It must be presumed that the exemption is made to disabled soldiers and sailors *because* of their disability.   It has been

the policy of the State for many years to treat sick and disabled soldiers and sailors of the war of the Rebellion in a sense as wards of the State. They are indeed entitled to grateful consideration. By statute it is declared that they are not to be deemed paupers, nor are they to be disfranchised by reason of being dependent on a town. R. S., ch. 24, § 8. The State appropriates for them and distributes among them annually many thousands of dollars as pensions. R. S., ch. 144. Dying in destitute circumstances, the State pays the necessary expenses of their burial. Laws of 1887, ch. 33. Those receiving state pensions are exempt from the payment of a poll tax, in common with other persons who by reason of age, infirmity and poverty are unable to contribute towards the public charges. R. S., ch. 6, § 1, par. VIII, as amended by Laws of 1895, ch. 64. The propriety or legality of these statute provisions has never been questioned. Neither, we think, can there be any question of the validity of the statute which exempts them from paying fees from pedlers' licenses. License fees, when paid, belong to the State, or its governmental subdivisions, the counties and towns. To remit their payment is nothing more nor less than a contribution to disabled soldiers and sailors by reason of their disability. We think it is both patriotic and constitutional.