[No. 6025. Decided March 9, 1906.]

George T. Bacon, *Appellant,* v. W. F. Locke, *as Constable, Respondent.*[1]

Constitutional Law—Commerce—Discrimination Against Citizens of Other States. Laws 1905, p. 372, providing that every person who canvasses or sells by sample certain specified articles "after shipment to the state," shall pay in advance a license fee of $200 per year, violates the state and Federal restrictions against discrimination between citizens of this and other states, and is unconstitutional.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered July 29, 1905, denying a petition for a writ of habeas corpus, by one convicted of peddling and canvassing without a license. Reversed.

*Rose & Graven,* for appellant.

*Virgil Peringer,* for respondent.

Root, J.—Appellant was arrested upon a complaint charging him with the crime of peddling and canvassing without a license, in violation of an act of the legislature approved March 14, 1905, and found at pages 372, 373 of the published laws of 1905. He filed a petition for his release upon a writ of habeas corpus, which petition and application was, by the honorable superior court, denied. From this order and judgment he appeals to this court.

It is his contention that the statute in question is in conflict with certain provisions of the constitution of the United

[1]Reported in 83 Pac. 721.

States and of this state. That portion of the statute involved herein reads as follows:

"That every person, firm or corporation who peddles out, or, after shipment to the state, canvasses and sells by sample to users or consumers, clocks, agricultural implements or machainery, stoves, ranges, windmills, lightning rods, wagons, buggies, carriages, surreys, and other similar vehicles, washing machines, sewing machines, churns, or groceries shall pay in advance a license tax of two hundred dollars ($200) for each calendar year, or portion thereof, to be paid in each county in which said occupation is pursued."

Appellant was agent of the Spaulding Manufacturing Company, whose factory is located at Grinnell, in the state of Iowa. On the 3d of July, 1905, he sold to Julius Shields in Whatcom county, as per sample then exhibited, a carriage or wagon, taking his order for the same, and afterwards on the 5th of July delivering the wagon thus sold, said wagon being taken from the warehouse of the Spaulding company, in said county, where it had a carload lot of carriages or wagons stored. It is urged by appellant that this statute discriminates against goods manufactured in other states, and consequently against the owners of said goods and their agents. Section 8, art. 1, of the United States constitution contains the following:

"The congress shall have power, . . . to regulate commerce with foreign nations and among the several states and with Indian tribes."

Section 2 of art. 4 contains the following:

"The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

Section 1 of the Fourteenth Amendment reads as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Section 12 of art. 1 of the state constitution reads as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

We think appellant's contention must be upheld. The clause "after shipment to the state," has the effect of discriminating between goods manufactured in this state and those shipped here from a sister commonwealth. To avoid this, was one of the prime purposes of the constitutional provisions hereinbefore quoted; and the decisions of the United States supreme court, as we understand them, have announced principles which, applied to this statute, would render it clearly obnoxious to the Federal constitution. *Webber v. Virginia*, 103 U. S. 344, 26 L. Ed. 565; *Brennan v. Titusville*, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; *Woodruff v. Parham*, 75 U. S. 123, 19 L. Ed. 382; *Welton v. Missouri*, 91 U. S. 275, 23 L. Ed. 347; *Brown v. Maryland*, 12 Wheat. 446, 6 L. Ed. 688; *Ex parte Deeds* (Ark.), 87 S. W. 1030; *Brown v. Houston*, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257; *Howe Machine Co. v. Gage*, 100 U. S. 676, 25 L. Ed. 754; *Emert v. Missouri*, 156 U. S. 296, 15 Sup. Ct. 367, 39 L. Ed. 430; *Walling v. Michigan*, 116 U. S. 446, 6 Sup. Ct. 454, 29 L. Ed. 691; *Ward v. Maryland*, 79 U. S. 418, 20 L. Ed. 449; *Robbins v. Shelby County Taxing Dist.*, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694.

In the case of *Webber v. Virginia*, 103 U. S. 344, 26 L. Ed. 565, the supreme court, speaking through Mr. Justice Field, said:

"By these sections, read together, we have this result: the agent for the sale of articles manufactured in other states must first obtain a license to sell, for which he is required to

pay a specific tax for each county in which he sells or offers
to sell them; while the agent for the sale of articles manu-
factured in the state, if acting for the manufacturer, is not
required to obtain a license or pay any license tax.    Here
there is a clear discrimination in favor of home manufacturers
and against the manufacturers of other states.    Sales by manu-
facturers are chiefly effected through agents.    A tax upon
their agents when thus engaged is, therefore, a tax upon
them, and if this is made to depend upon the foreign char-
acter of the articles, that is, upon their having been manu-
factured without the state, it is to that extent a regulation
of commerce in the articles between the states.    It matters not
whether the tax be laid directly upon the articles sold or in
the form of licenses for their sale.    If by reason of their for-
eign character the state can impose a tax upon them or upon
the person through whom the sales are effected, the amount of
the tax will be a matter resting in her discretion.    She may
place the tax at so high a figure as to exclude the introduction
of the foreign article and prevent competition with the home
product.    It was against legislation of this discriminating
kind that the framers of the Constitution intended to guard
when they vested in Congress the power to regulate com-
merce among the several states.    .   .   .    Commerce among
the states in any commodity can only be free when the com-
modity is exempted from all discriminating regulations and
burdens imposed by local authority by reason of its foreign
growth or manufacture."

In *Robbins v. Shelby County Taxing Dist., supra,* at page
497, the supreme court, speaking by Mr. Justice Bradley,
employs this language:

"When goods are sent from one state to another for sale,
or, in consequence of a sale, they become part of its general
property, and amenable to its laws; provided that no dis-
crimination be made against them *as* goods from another
state, and that they be not taxed by reason of being brought
from another state, but only taxed in the usual way as other
goods are.    *Brown v. Huston, qua supra; Machine Co. v.
Gage,* 100 U. S. 676.    But to tax the sale of such goods, or
the offer to sell them, before they are brought into the state,
is a very different thing, and seems to us clearly a tax on
interstate commerce itself."

In the case of *Brennan v. Titusville, supra,* at page 302, the court, speaking by Mr. Justice Brewer, announced the following:

"It is undoubtedly true that there are many police regulations which do not affect interstate commerce, but which have been and will be sustained as clearly within the power of the state; but we think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the state without the assent of congress, and that the silence of congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free.

"That this license tax is a direct burden on interstate commerce is not open to question. In the early and leading case of *Brown v. Maryland,* 12 Wheat. 419, 444, in which a state law requiring an importer to take out a license and pay $50 before he should be permitted to sell a package of imported goods, was adjudged in conflict with the commerce clause in the national Constitution, Chief Justice Marshall said: 'But should it be proved that a duty on the article itself would be repugnant to the Constitution, it is still argued that this is not a tax upon the article, but on the person. The state, it is said, may tax occupations, and this is nothing more. It is impossible to conceal from ourselves that this is varying the form without varying the substance. It is treating a prohibition which is general, as if it were confined to a particular mode of doing the forbidden thing. All must perceive that a tax on the sale of an article, imported only for sale, is a tax on the article itself.' "

In the case of *Machine Company v. Gage,* 100 U. S. 676, 25 L. Ed. 754, the court, through Mr. Justice Swayne, spoke as follows:

"A law which requires a license to be taken out by peddlers who sell articles not produced in the state, and requires no such license with respect to those who sell in the same way articles which are produced in the state, is in conflict with the power of Congress to regulate commerce with foreign nations and among the several states."

It would seem that the citation just made is so applicable to the case at bar as to render it absolutely conclusive of the question involved.

In *Welton v. Missouri,* 91 U. S. 275, 23 L. Ed. 347, the supreme court used this language:

"Where the business or occupation consists in the sale of goods, the license tax required for its pursuit is in effect a tax upon the goods themselves. If such a tax be within the power of the state to levy, it matters not whether it be raised directly from the goods, or indirectly from them through the license to the dealer; but, if such tax conflict with any power vested in Congress by the Constitution of the United States, it will not be any the less invalid because enforced through the form of a personal license."

In an elaborate note to *People v. Wemple,* 27 Am. St. 542, 561, Mr. Freeman lays down the rule as follows:

"A state may exact a license fee from persons carrying on business within its territory, without rendering its action in so doing subject to the objection that it is attempting to regulate interstate or foreign commerce, provided it does not discriminate in favor of its people, products, or manufactures, nor charge persons importing articles of commerce within the state for the privilege of there disposing of them."

Respondent contends with much ability and ingenuity that the language of this statute may be so construed as to avoid constitutional objections. He contends that the phrase "after shipment to the state" refers to persons and not to property; and also that it is susceptible of the construction that would express an intention that nonresidents who send their agents into this state simply to canvass and take orders for their principals are excepted from the requirements of the statute, and that no others are excepted. We are unable to recognize force in these contentions. The language is not obscure or ambiguous, and we cannot give to it a significance strained and unnatural. Sutherland, Stat. Constr., §§ 235, 237, and 238; *McClusky v. Cromwell,* 11 N. Y. 593. The effect of the usual and ordinary meaning of the language employed in the

statute being to require of a canvasser a license when selling goods shipped from a sister state to this, but not imposing a like obligation upon one canvassing for goods manufactured in this state, we are constrained to hold the statute inhibited by the Federal constitution.

The judgment of the honorable superior court is reversed, and the cause remanded with instructions to grant the writ and release the appellant.

MOUNT, C. J., CROW, RUDKIN, FULLERTON, HADLEY, and DUNBAR, JJ., concur.