## FARLEY v. WATT, Chief of Police.

No. 23962.   May 16, 1933.

Rehearing Denied June 6, 1933.

Paul F. Showalter, for petitioner.

A. P. Van Meter, Asst. Municipal Counselor, for respondent.

RILEY, C. J. This is an original action, wherein Richard C. Farley seeks release from imprisonment which was occasioned by his alleged violation of ordinance No. 4402, Oklahoma City. That ordinance regulates hucksters, peddlers, and hawkers. It requires payment of a license fee or tax in the amount of $80 per annum, and provides a penalty for noncompliance. No exception is contained in the ordinance.

The authority of municipal subdivisions of the state to levy and collect such fees or taxes is derived from the state. Section 20, art. 10, Constitution of Oklahoma; section 6389, O. S. 1931 (section 4556, C. O. S. 1921; R. L. sec. 581, St. 1890, sec. 603).

"The city council shall have authority to levy and collect a license tax on * * * peddlers. * * *"

It is to be noted that an exception is provided in the original statutory grant of authority to levy this license tax, and it is as to "All scientific and literary lectures and entertainments * * * and all concerts and musical entertainments given exclusively by citizens of the city."

Additional exceptions and exemptions were made by the Legislature in chapter 101, S. L. 1910-11, whereby it was made "lawful for any indigent or disabled ex-Confederate or ex-Union soldier or sailor or widow of same, residing in this state, to engage in what is commonly known as hawking and peddling * * * without paying either state, county, city or town license or tax for the privilege of so doing."

By section 2 thereof, all laws and parts of laws in conflict were expressly repealed.

In 1923, S. L. 1923, p. 226, ch. 136, an amendment restricted the exemption to needy and disabled "ex-service persons," and a provision was made for their widows. An extension of the meaning of ex-service persons was made so as to include veterans of the Spanish-American and World Wars. There was slight variation in the time of residence required.

In 1927, further amendments were adopted, restricting the exemption to "needy or disabled ex-service persons, residing in this state," so that it was thereby made lawful by chapter 75, S. L. 1927 [secs. 12002-12006, O. S. 1931] for such persons to peddle without payment of a fee upon a proper showing. A certification by the county judge was provided as to (1) honorable discharge from such military service, and as to (2) need and/or disability. A provision for revocation of the county judge's certificate was made.

The effect of the legislative acts (1910-11, 1923, 1927) is to withdraw authority from the municipal subdivision of the state to levy and collect the tax from the designated persons. City of Muskogee v. Wilkins, 73 Okla. 192, 175 P. 497; Ex parte Mayes, 64 Okla. 260, 167 P. 749; N. Y. Life Ins. Co. v. Town of Comanche, 62 Okla. 247, 162 P. 466.

The substance of the respective legislative provisions—the city ordinance upon one hand and the statute of the state upon the other —is diametrically opposed.

The sovereign state has said:

"It shall be lawful for needy or disabled ex-service persons residing within this state to engage in what is commonly known as 'hawking and peddling,' etc., without payment of a license fee."

The subordinate municipal subdivision has said: "Any person" engaging in hawking and peddling without having procured a license and without having paid the fee assessed therefor, "shall be deemed guilty of an offense," etc.

"Where, in the course of litigation, a conflict arises between the ordinance of a city and the statute law of the state, the

latter prevails and the former must yield." Carlton v. Boudar, 118 Va. 521, 88 S. E. 174, 4 A. L. R. 1480; Hewlett v. Kamp, 115 Ala. 499, 22 So. 137; Jackson v. City of Sylacauga (Ala. App.) 144 So. 125; Grantham v. Chickasha, 156 Okla. 56, 9 P. (2d) 747; In re Lanksford, 72 Okla. 40, 178 P. 673.

There is nothing contained in Ex parte Dickison, 138 Okla. 266, 280 P. 797, contrary to this view, for therein the parties agreed upon the unconstitutionality of the exemption statutes, and for the purpose only of that cause the statutes were treated as void ab initio.

The constitutionality of chapter 75, S. L. 1927, is now squarely before the court.

Numerous cases from other jurisdictions are cited. Many of them, such as Marallis v. Chicago (Ill.) 83 A. L. R. 1222, 182 N. E. 394, are distinguished, for the statutes under consideration were without regard to disability or poverty.

On the other hand, there are cases, such as State v. Montgomery, 92 Me. 433, 43 Atl. 13, sustaining exemptions to disabled ex-soldiers and sailors.

"It has been the policy of the state for many years to treat sick and disabled soldiers and sailors * * * in a sense, as wards of the state. * * * The state appropriates for them and distributes among them, annually, many thousands of dollars. * * * License fees, when paid, belong to the state, or its governmental subdivisions, the counties and towns. To remit their payment is nothing more nor less than a contribution to disabled soldiers and sailors by reason of their disability. We think it is both patriotic and constitutional."

Conrad v. Lengel (1924) 110 Ohio St. 532, 144 N. E. 278, sustains this view, as does McClendon v. State (1912) 179 Ala. 54, 60 So. 392, Ann. Cas. 1915C, 691, and Burch v. Ocilla, 5 Ga. App. 65, 62 S. E. 666, and City of Macon v. Samples, 167 Ga. 150, 145 S. E. 57.

In the cause at bar, it is admitted that Farley complied with all the regulatory provisions of chapter 75, S. L. 1927, and that he is such a person as contemplated by the provisions of the act.

It is contended that the statute, supra, is violative of the provision contained in the 14th Amendment to the federal Constitution.

"* * * No state shall * * * deny to any person within its jurisdiction the equal protection of the laws. * * *"

The contention is one of lack of uniformity and one of capricious classification. But to justify judicial interference, the right to classify being a legislative function, the classification adopted must be based on an invidious and unreasonable distinction or difference with reference to the subject of the tax. Unless this appears the courts will not declare the classification void, though it may not meet their approval.

In re Gross Prod. Tax of Wolverine Oil Co., 53 Okla. 24, 154 P. 362.

It is our view that the statute is not violative of the 14th Amendment to the federal Constitution, nor is it violative of the provisions of the state Constitution, sec. 5, art. 10, or sec. 51, art. 5, and the reason for our view is that the sovereign state possesses power to withdraw in whole or in part a former grant of authority to levy and collect an occupational tax. N. Y. Life Ins. Co. v. Town of Comanche, supra.

It is true the majority of courts have followed the Vermont view stated in State v. Shedrol, 75 Vt. 277, 54 Atl. 1081, 63 L. R. A. 179, 98 Am. St. Rep. 825, wherein it is said:

"The veterans were originally from no particular class, and when discharged from the army they returned to no particular class—they again became a part of the general mass of mankind, with the same constitutional rights, privileges, immunities, burdens and responsibilities as other citizens similarly circumstanced in law of the same jurisdiction."

We do not agree with this view. In the first place, the soldiers of the late war were selected from a particular class. It was a governmental classification. The government selected male citizens of a particular age. The vast majority of those who served were between the ages of 18 and 31. They were then in the formative stages of their lives. Many of them when discharged did not, as the Vermont court said, become a part of the general mass of mankind. For far too many there was no Armistice, there was no discharge, but simply the padded cell, the hospital cot, the white cross. The war definitely interrupted the studies, the vocations, the businesses of those young men, who were making essential preparations for occupational or professional careers. Those who were classified and called away were handicapped, not only by an interrupted preparation, but by a tremendous inflation of values which met them upon their return. They

were handicapped by physical disability incident to their governmental service and in wealth and opportunity. They constituted a distinct class—distinguished from the mass of society—a class created by deprivation of equal opportunity in civil pursuits at home and marked by disability incident to defense of their country abroad. Marallis v. Chicago (Ill.) 83 L. R. A. 1222.

Ex-soldiers—especially disabled and needy—may be segregated into a class for the purposes of legislation otherwise valid. People v. Retirement Bd., 326 Ill. 579, 158 N. E. 220, 54 A. L. R. 940; Eddy v. Morgan, 216 Ill. 437, 75 N. E. 174; U. S. v. Hall, 98 U. S. 343, 25 L. Ed. 180.

While it may be true there is no relation between the service of a soldier and the business of a peddler, yet there is a relation between the duty of the sovereign and the granting of a privilege to a needy or disabled soldier which will enable him to provide for his daily needs so as to relieve society from his maintenance and care.

The writ is made permanent.

SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., dissents.