[No. 31327. *En Banc.* November 30, 1950.]

RAYMOND M. LARSON, *Respondent*, v. THE CITY OF SHELTON
et al., *Appellants.*[1]

*Glenn E. Correa*, for appellants.

*Mosler & Goldblatt* and *Saul D. Herman*, for respondent.

[1]Reported in 224 P. (2d) 1067.

HILL, J.—The question presented is whether §§ 9 and 10 of chapter 144, p. 416, of the Laws of 1945 violate the Washington state constitution, Art. I, § 12, and the equal rights provisions of the fourteenth amendment to the constitution of the United States. The sections in question are:

"Sec. 9. Section 1, chapter 69, Laws of 1903 (section 10755, Remington's Revised Statutes, also Pierce's Perpetual Code 728-61), is amended to read as follows:

"Section 1. Every honorably discharged soldier, sailor or marine of the military or naval service of the United States, who is a resident of this state, shall have the right to peddle, hawk, vend and sell goods, other than his own manufacture and production, without paying for the license as now provided by law, by those who engage in such business; but any such soldier, sailor or marine may engage in such business by procuring a license for that purpose as provided in section 10 of this act. . . . .

"Sec. 10. Section 2, chapter 69, Laws of 1903 (section 10756, Remington's Revised Statutes, also Pierce's Perpetual Code 728-63), is amended to read as follows:

"Section 2. On presentation to the County Auditor or City Clerk of the county in which any such soldier, sailor or marine may reside, of a certificate of honorable discharge from the army or naval service of the United States, such County Auditor or City Clerk, as the case may be, shall issue without cost to such soldier, sailor or marine, a license authorizing him to carry on the business of peddler, as provided in section 9 of this act."

The section of the state constitution with which we are concerned is as follows:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

The facts, as alleged in the complaint and by demurrer conceded to be true, are that Raymond W. Larson is an honorably discharged veteran of the United States naval service, that he is a resident of Seattle, King county, Washington, and is possessed of a peddler's license issued by the city of Seattle.

The city of Shelton at all times referred to herein had an

ordinance which appears in its entirety in the complaint. Section 1 of the ordinance declares a nuisance the practice of going in and upon private residences in the city of Shelton without invitation or request to do so, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise.

Section 2 provides that any person desiring to engage in the business of peddling within the city of Shelton shall first obtain a license, and the applicant must do four things: (a) apply for a license at least seven days before he can be authorized to begin business, giving his name and address, the kind and type of business, and the length of time for which the license is desired; (b) deposit with the city clerk a bond in the amount of five hundred dollars, which bond shall be conditioned that all goods, wares and merchandise sold or for which orders are taken shall be as represented by the applicant and that he shall refund any payments purchasers are induced to make through misrepresentation as to the kind and character of such goods, wares and merchandise; (c) file an instrument making the city clerk his agent for the service of process in any action brought against the bond; and (d) pay a license fee of ten dollars a day, fifty dollars a week, or one hundred dollars for thirty days.

Section 3 of the ordinance provides that anyone guilty of perpetrating a nuisance as described in section 1 shall, upon conviction, be fined in a sum not to exceed one hundred dollars or be committed to the city jail for not to exceed thirty days; and that any person violating the provisions of section 2 shall be subject to the same penalties.

The concluding paragraph of the complaint and its prayer are as follows:

"That the Plaintiff [respondent] desires to peddle, hawk, vend and sell goods other than his own manufacture and production in the City of Shelton, but that the Defendants [appellants] threaten to and will arrest and incarcerate Plaintiff unless they are restrained by this Court. That plaintiff has no speedy or adequate remedy at law.

"WHEREFORE, Plaintiff prays for an Order of this Court permanently restraining and enjoining the Defendants from

arresting or incarcerating the Plaintiff on account of the Ordinance mentioned herein, and for such other and further relief as to the Court may seem just and equitable."

The defendants (the city of Shelton, its mayor and its chief of police) demurred to the complaint on the ground that it did not state a cause of action. The demurrer having been overruled and the defendants having refused to plead further, the court entered a decree enjoining the defendants from arresting or incarcerating the plaintiff

". . . because of plaintiff's engaging in the business of peddling, hawking, vending and selling goods other than his own manufacture and production, on the ground and for the reason that plaintiff is possessed of a peddler's license issued by the City of Seattle, the City of plaintiff's residence, said license having been procured under the provisions of Rem. Rev. Stat. Section 10755 and Section 10756 [Laws of 1945, chapter 144, §§ 9 and 10; Rem. Supp. 1945, §§ 10755 and 10756]."

It was further ordered that, as long as the plaintiff was possessed of a valid peddler's license issued in compliance with and according to the terms of those sections of the statutes, he need not procure a license from the city of Shelton in order to engage in the business of peddling, etc., in that city.

The defendants appeal.

It is not clear to us whether the trial court intended to restrain the city of Shelton, its mayor and its chief of police from enforcing section 1 of the ordinance referred to, which declares it to be a nuisance for a peddler to go in and onto private residences in that city without permission so to do, irrespective, as we read the ordinance, of whether the peddler has a license. The question of the validity of that section of the ordinance is not discussed in the briefs and is not passed upon by this court.

It is clear that the trial court was of the opinion that none of the licensing provisions of the Shelton ordinance had any application, and that the respondent did not need to apply to the city of Shelton for a license, or post a bond, pay a li-

cense fee, or do anything required by section 2 of the ordinance.

▮ Apart from the legislation here in question, the state of Washington has regarded the business of peddling (except as to peddlers of agricultural, horticultural and farm products which they may grow or raise, and except as to vendors of books, periodicals and newspapers) as subject to regulation for the protection of the public. There is a law for that purpose effective throughout the state except within the limits of cities and towns which by ordinance regulate the sale of goods, wares and merchandise by peddlers. Rem. Rev. Stat., § 8353 [P.P.C. § 728-49] *et seq.* Under that law, every peddler, before commencing business in any county of the state, must make application in writing and under oath for a county license. Such application must state the names and residences of the owners or parties in whose interest the business is conducted and the number of horses and vehicles to be used. At the same time, the applicant must file a true statement of the kind and value of the stock of goods, wares and merchandise that is in the county for sale or is to be kept or exposed for sale in the county. He is also required to make a desposit of five hundred dollars with the county treasurer. Rem. Rev. Stat., § 8355. This deposit is required for the protection of those who do business with the peddler, the statute reading:

"Each deposit made with the county treasurer of any county in this state shall be subject to all taxes legally chargeable to same, to attachment and execution on behalf of the creditors of the licensee whose claims arise in connection with the business done under his county license, and the treasurer may be held to answer as trustee in any civil action in contract or tort brought against any licensee, and shall pay over, under order of the court or upon execution, such amount of money as the licensee may be chargeable with upon the final determination of the case. . . ." Rem. Rev. Stat., § 8358.

The fees listed, in addition to the deposit, for issuance of a license good for one year are as follows: peddler on foot, $100; with one horse and a wagon, $150; with two horses

and a wagon, $250; and with any other conveyance, $300. Rem. Rev. Stat., § 8355.

As heretofore pointed out, this act applies except within the limits of any city or town which, by ordinance, regulates the sale of goods, wares and merchandise within its limits. The act represents an exercise of both the police and taxing powers of the state. *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N.S.) 1207. Shelton is within the exception and has its own regulatory ordinance, which, as we have seen, requires a five-hundred-dollar bond for the protection of the public, comparable to the five-hundred-dollar deposit with the county treasurer required by Rem. Rev. Stat., § 8355.

The protection of the public is an obvious reason for such provisions in the state law and city ordinances. Peddlers are here today and gone tomorrow; unless a bond or deposit of some kind is required, their customers have no remedy for fraud. In *People v. Russell*, 49 Mich. 617, 619, 14 N. W. 568, 569, 43 Am. Rep. 478, Judge Cooley makes this statement:

"That the regulation of hawkers and peddlers is important if not absolutely essential may be taken as established by the concurring practice of civilized states. They are a class of persons who travel from place to place among strangers, and the business may easily be made a pretense or a convenience to those whose real purpose is theft or fraud. The requirement of a license gives opportunity for inquiry into antecedents and character, and the payment of a fee affords some evidence that the business is not a mere pretense."

■ The Laws of 1945, chapter 144, §§ 9 and 10, are patently unconstitutional if the legislature intended that a veteran having a license issued under § 10 may operate as a peddler any place in the state without complying with the laws and ordinances applicable to other peddlers, enacted under the police power for the protection of the public. No case has been cited, and we do not believe that any can be found, where it has been held that a peddler who is not a veteran must give a bond for the protection of his customers but a peddler who is a veteran need not give such a bond.

Any such distinction would be wholly unreasonable and arbitrary, and would have no relation to a proper object of such legislation, namely, the protection of the public.

The supreme court of Wisconsin pays its respects to such a classification in these words:

"Another discrimination in favor of the blind, deaf and dumb, cripples, and partially disabled veterans of the war of the Rebellion, is surely false if this is a police measure. If deceit and swindling is to be feared in disproportionate degree from peripatetic traders, and is less easy of punishment, all such reasons apply with equal force to the members of this exempted class as fully as to the rest of the community. The falsity of the discrimination would, of course, be obvious in a law which undertook to punish acts of fraud and deceit in peddling, and how can it be any more legitimate in a law which is intended to prevent such deceits? Certainly no considerations of gratitude due from the community to the veteran soldier could be recognized for a moment as authorizing the legislature to exempt him, as a so-called class, from a law imposing punishment for theft or other crime, for the distinguishing circumstances would have no relation to the purpose of the law, which is to protect the public against the commission of such offenses." *State v. Whitcom*, 122 Wis. 110, 122, 99 N. W. 468, 471.

The only basis on which even a plausible argument can be made for the constitutionality of the challenged legislation is that the license fees referred to constitute a tax, and that the act in question does no more than exempt all veterans from the payment of such taxes.

We have made an exhaustive investigation of the authorities relative to the validity of legislation exempting veterans from the payment of peddlers' license fees. Where indigent and disabled veterans have been exempted from the payment of peddlers' license fees, the legislation has been upheld in Georgia (*City of Macon v. Samples*, 167 Ga. 150, 145 S. E. 57), Maine (*State v. Montgomery*, 92 Me. 433, 43 Atl. 13) and Oklahoma (*Farley v. Watt*, 165 Okla. 6, 23 P. (2d) 687). However, such legislation has been held to be unconstitutional in Arkansas (*Edelemann v. City of Fort Smith*, 194 Ark. 100, 105 S. W. (2d) 528) and Texas (*Ex*

*parte Jones*, 38 Tex. Crim. App. 482, 43 S. W. 513). But where veterans have been exempted from the payment of peddlers' license fees without reference as to whether they were disabled or indigent, all of the states except New Jersey which have passed upon the question have agreed that such an exemption is unconstitutional, as granting a special privilege or immunity to a certain class without any reasonable ground of difference: Iowa (*State v. Garbroski*, 111 Iowa 496, 82 N. W. 959, 82 Am. St. 524) 56 L. R. A. 570, Illinois (*Marallis v. Chicago*, 349 Ill. 422, 182 N. E. 394, 83 A. L. R. 1222), Massachusetts (*Commonwealth v. Hana*, 195 Mass. 262, 81 N. E. 149, 122 Am. St. 251, 11 Ann. Cas. 514, 11 L. R. A. (N.S.) 799), Mississippi (*Adams v. Standard Oil Co.*, 97 Miss. 879, 53 So. 692), South Carolina (*City of Laurens v. Anderson*, 75 S. C. 62, 55 S. E. 136, 117 Am. St. 885, 9 Ann. Cas. 1003), Vermont (*State v. Shedroi*, 75 Vt. 277, 54 Atl. 1081, 98 Am. St. 825, 63 L. R. A. 179), and Wisconsin (*State v. Whitcom*, 122 Wis. 110, 99 N. W. 468).

In the case last cited, the basis for the distinction between legislation exempting all veterans from the payment of peddlers' fees and legislation exempting disabled and indigent veterans, is stated as follows:

". . . If, on the other hand, this be a tax measure, an exemption of people partially disqualified from means of livelihood could be justified, if at all, only upon the assumption that they, as a class, are distinct from the rest of the community as either actual or potential paupers, so that it might be the part of wisdom in the legislature to exempt them from burdens upon possible forms of industry, to the end that the very moneys which would otherwise be exacted from them, with perhaps considerable additions, might not at once have to be paid out of the same treasury for their support."

We have heretofore indicated, in upholding the exemption granted to peddlers of agricultural products, books, periodicals and newspapers by the terms of Rem. Rev. Stat., § 8353, that the exempt classes must have some relation to the business being regulated, and that an exemption of peddlers based upon previous military service would be on the

same basis, from the standpoint of logical relationship, as an exemption based on the color of hair or eyes. We quote Judge Parker's language in *McKnight v. Hodge*, 55 Wash. 289, 104 Pac. 504:

"It may be conceded that the discrimination between the classes must rest upon some reasonable ground of difference, and that such difference must have some relation to the business, and not be a mere difference in the persons placed in the respective classes or subclasses, which is entirely foreign to the business, such as a difference in citizenship. (*Bacon v. Locke*, 42 Wash. 215, 83 Pac. 721; *State v. Montgomery*, 94 Me. 192, 47 Atl. 165, 80 Am. St. 386; *Simrell v. City of Covington*, 90 Ky. 444, 14 S. W. 369, 29 Am. St. 398, 9 L. R. A. 556); or a difference by reason of previous military service. *City of Laurens v. Anderson*, 75 S. C. 62, 55 S. E. 136, 117 Am. St. 885; *State v. Garbroski*, 111 Iowa 496, 82 N. W. 959, 82 Am. St. 524, 56 L. R. A. 570; *State v. Shedroi*, 75 Vt. 277, 54 Atl. 1081, 98 Am. St. 825, 63 L. R. A. 179. In all such cases it will be noticed the difference used as a basis for classification has no more relation to the business or proper purpose of the legislation than if it were a distinction based upon a difference in the color of hair or eyes of the persons sought to be put into the different classes."

We find ourselves in accord with the reasoning of the courts of Iowa, Illinois, Massachusetts, Mississippi, South Carolina, Vermont and Wisconsin, which have held that an exemption from license fees when applicable to veterans without regard to disability or indigency, is a violation of a constitutional provision prohibiting the granting to a class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens. Each of the cases from those states (see *supra*) gives a careful and painstaking consideration to the constitutional questions involved. The lone dissident, New Jersey, has held that a veteran could not be prosecuted for a violation of a borough ordinance which prohibited all peddling when he held a license issued in accordance with a statute which required no fee and no bond for the issuance of peddlers' licenses to veterans of any war. This was in a one-page opinion in *Strauss v. Borough of Bradley Beach*, 117 N. J. L. 45, 186 Atl. 681, and the court gave no consideration to the legislation in-

volved as affecting the exercise of either the police or the taxing power; nor was there any citation of supporting authority. The court's reasoning is contained in the words:

"It has for many years been the custom of the state to recognize veterans of our wars as men in a class distinct from the mass of its citizens; a class which has rendered distinctive service to the country, in many cases suffering injuries or lasting disability.

"It would seem that the act is but a method of rewarding those who have served in the protection of the country at large. Many states have given specific sums of money to its individual citizens engaged in its wars; including our own."

■ We quite agree that veterans are a "class distinct" for certain purposes, and that they are deserving of special consideration in various ways. *State ex rel. Hart v. Clausen,* 113 Wash. 570, 194 Pac. 793, 13 A. L. R. 580; *State ex rel. Troy v. Yelle,* 36 Wn. (2d) 192, 217 P. (2d) 337. There is a legitimate and proper feeling of gratitude toward them, but the legislature has no authority to express that gratitude in enactments which suspend the operation of criminal laws or regulations enacted under the police power for the protection of the public, or which make unreasonable and discriminatory classifications for taxation purposes.

Our conclusion being that the Laws of 1945, chapter 144, §§ 9 and .10 (Rem. Supp. 1945, §§ 10755 and 10756 [P.P.C. §§ 728-61, -63]), are unconstitutional for the reasons given herein, it necessarily follows that the city of Shelton and its officers cannot be enjoined from performing their duty merely because respondent has a license issued under those sections; and the demurrer should have been sustained. The order appealed from is set aside, with directions to the trial court to enter an order sustaining the demurrer.

BEALS, ROBINSON, MALLERY, GRADY, and HAMLEY, JJ., concur.

SIMPSON, C. J., dissents.

SCHWELLENBACH, J. (concurring in the result)—I do not believe that a constitutional question is involved in this

case. A peddler's license was issued to the respondent by the city of Seattle under its powers to regulate such enterprise. Under the provisions of Rem. Rev. Stat., § 10756, no charge was made by the city for the license. Undoubtedly, this license permitted the respondent to peddle any place within the city limits of Seattle. But what right has he to peddle in Shelton under a Seattle license? It is not necessary for us to decide in this case whether or not the legislature could legally authorize such a procedure. Our sole problem is to determine whether the legislature did so authorize in amending Rem. Rev. Stat., §§ 10755, 10756.

The purpose of enacting chapter 144, Laws of 1945, is clearly set out in the title thereto: "An Act relating to certain veterans; providing for the relief of the same; prescribing the duties of certain officers; providing for certain licenses and amending . . . sections 1 and 2, chapter 69, Laws of 1903 (sections 10755 and 10756, Remington's Revised Statutes), . . ." As amended, Rem. Rev. Stat., § 10755, states that every honorably discharged veteran who is a resident of this state, shall have a right to peddle without paying for the license as now provided by law. Rem. Rev. Stat., § 10756 states that upon presentation to the county auditor *or* city clerk of the county *in which the veteran may reside*, of a certificate of honorable discharge, he shall be issued, without charge, a license to peddle.

All the legislature intended to accomplish by this amendment was to insure to such veteran the issuance of a peddler's license without requiring him to pay the usual license fee normally required. Had the legislature intended to take away from cities and towns their right to regulate peddlers by ordinance, or had it intended to permit an honorably discharged veteran to peddle in any county of the state under a license issued to him by the county or city of his residence, it would have indicated this intention in the title of the amending act, and would, and should, have so stated in the body of the act. No apparent attempt was made by the legislature to amend chapter 110, p. 213, Laws of 1929 (Rem. Rev. Stat., § 8353 [P.P.C. § 728-49]), which states "That

nothing in this act shall apply to peddlers within the limits of any city or town which by city ordinance regulates the sale of goods, wares or merchandise by peddlers: . . ."

I find nothing in the act authorizing respondent to peddle in Shelton under the license issued to him by the city of Seattle. Neither do I find any language in the act warranting us to find an intention on the part of the legislature to permit this to be done.

DONWORTH, J., concurs with SCHWELLENBACH, J.