PEOPLE *v.* SMITH.

1. HAWKERS AND PEDDLERS—LICENSE—VALIDITY OF ORDINANCE —DISCRIMINATION.

An ordinance licensing hawkers and peddlers is not invalid because it excepts from its provisions persons selling vegetables, fish, meat, or farm products, and bakers delivering bread and pastry to their customers.

2. SAME—COMMERCE—INTERSTATE COMMERCE.

The agent of a foreign corporation, admitted to do business in Michigan, who goes from house to house selling tea, coffee, and spices by sample, a part of the orders for which he fills from a stock kept at his place of business, and the remainder of which he fills from goods ordered from his principal without the State for that purpose, is not engaged in interstate commerce.

Error to Ionia; Davis, J. Submitted January 23, 1907. (Docket No. 128.) Decided March 5, 1907.

Isaac J. Smith was convicted of peddling without a license, and sentenced to pay a fine of $5.00 and costs or in default thereof to 10 days' imprisonment in the county jail. Affirmed.

Respondent was convicted of a violation of an ordinance of the city of Ionia, which requires hawkers and peddlers to procure and to pay for a license, and has been sentenced to pay a fine of $5 and $17.40 costs, and, in default of such payment, to be committed to the county jail until the fine is paid, but not for a period longer than 10 days. Respondent having brought the case to this court on exceptions before sentence, it was dismissed. *People v. Smith*, 146 Mich. 193. Thereafter sentence was pronounced, and the case is before us on error.

The facts are not in dispute. The ordinance of the city of Ionia relative to licenses is known as " Ordinance No. 38," section 5 of which provides that peddlers or persons going about the city on foot, or with a wagon or vehicle, and selling or offering for sale either by sample or otherwise any goods, wares, supplies, or property shall pay a weekly license fee of $5, and that " this section shall not apply to any person or persons selling, i. e., vegetables, fish, meat, or farm produce, nor to bakers delivering bread and pastry to their customers at their dwellings in said city." For violation of this ordinance, a penalty of a fine, or fine and imprisonment, may be, upon conviction, imposed. Respondent styles himself, and is known as, agent of the Grand Union Tea Company, a New Jersey corporation, having its principal office in the city of New York. The advertising matter circulated by it sets out that it has branch stores in the principal cities of the United States and that:

" We bring our teas and coffees direct from the plantation to the consumer, thus saving all middle profits. This enables us to sell cheaper than other retailers. Most large houses spend fortunes in advertising. We advertise by giving presents with our goods, thus sharing with our customers the profit of our business."

It has a department manager residing in Detroit, Mich., whose territory embraces Michigan, Illinois, Wisconsin, and the northwestern States through to the coast. It has a branch store at Grand Rapids, Mich., where orders from agents are filled, and where it sells its goods at retail. It has 11 other stores in Michigan where it sells its goods at retail. It has also a branch store at Toledo, in the State of Ohio. The territory is divided among the branch stores and their managers; the manager at Toledo having 14 towns in Michigan where agents work, as well as parts of Ohio. Respondent resides at Ionia, and is engaged in selling the goods of this concern in that city. His authority, so far as appears, was derived from

a letter, dated May 4, 1905, written to him by the department manager, in the following terms:

" If you would like Ionia you can have it. The other party is too slow. I do not care to hold that point open for him any longer. You can fill in the manager's inquiry blank, and I will forward it as soon as received."

When he first began doing business at Ionia for the company, he, by direction of the company, sent his orders for goods to the Grand Rapids store, where they were filled and the goods shipped to him from Grand Rapids. Later he was instructed by the department manager at Detroit to send his orders to the Toledo store. Up to that time, the company had paid respondent's license fees, but, having received a notice that the license fee was to be increased from $5 a week to $10 a week, and to avoid paying what was claimed to be an excessive license fee, and assuming that if the orders were sent to Toledo the business carried on by respondent, or by the company through respondent, would be interstate commerce, the direction to respondent was given. The department manager testified that:

" It is not possible for us to conduct business in a town of this character and size and pay a license fee of $10 a week without doing it at a loss."

Thereafter respondent received his goods from Toledo, and it was while he was so receiving goods that he was arrested and convicted. Respondent does not carry on a store or sell goods for others than the Grand Union Tea Company. He travels about with a horse and wagon furnished by this company, solicits orders from consumers of the goods, and delivers goods previously ordered. He is paid by way of a commission upon sales actually made. In taking orders, he makes a memorandum of the orders on cards furnished him by the company. The card in evidence reads as follows:

Form 84.          280          No.

Property of
Grand Union Tea Company,
Corner Pearl and Water Streets,
Brooklyn Borough, New York.

. Mrs. Green.

No. ----------------------------------------------------------

| Dr. | Cts. · | Tickets. |
|---|---|---|
| When deliver. | | |
| 9–21 | ½ Green Tea_____ | $0 25 |
| 9–23 | 1 Coffee Gr._____ | 30 |
| | 1 B. Powder _____ | 50 |
| | | $1 05 |

He sells teas, coffees, extracts, baking powder, spices, starches, and soaps. When an order is taken, no memorandum or paper or writing is given to the person from whom the order is taken and no money is collected until the goods are delivered. When a number of orders have been taken, the cards showing the orders are sent to the branch house at Toledo, and, in the course of time, goods corresponding with the orders, addressed "Grand Union Tea Company, Ionia, Michigan," are, at the expense of the company, shipped to respondent. The cards are returned to him. The goods are put up in packages corresponding with the order cards, packed in boxes, but no particular package is put up for any particular customer, no package marked with the name of the customer, and no account is made or kept with any person other than respondent.

" *Q.* Those different packages — it is not known whom those different packages belong to until you make your delivery to your customer?

" *A.* No, sir; I attend to that myself. They are too busy down there.

" *Q.* You do that, you do the division, sorting out, and delivering when it comes here?

" *A.* Yes, sir, to my customers.

" *Q.* When you get these boxes, where do you take them to make this assortment and division?

" *A.* To my store.

"*Q.* There you unpack the boxes and lay the contents out on your counters in suitable shape?

"*A.* Yes, sir; put them on the shelves.

"*Q.* After you have got them all laid out on the shelves, you take up your orders and see whom you have got to make deliveries to, do you?

"*A.* Yes, sir.

"*Q.* Then if a person has ordered tea or coffee, you take out tea and coffee, and put it in shape to be delivered to that person?

"*A.* Yes, sir."

No goods refused by customers are ever returned to the company. If the customer refuses to take goods, subsequent orders for like goods are filled by the agent, if he has the goods on hand, and if goods ordered by him are not thus disposed of they are used in his own family. Respondent keeps and uses two telephones in his house, pays for them, receives orders for goods by telephone, writes them out on the cards and disposes of the cards as in other cases. With the sale made, tickets are given, entitling the purchaser to premiums or gifts, and these tickets are redeemed by the respondent from goods kept in stock at his house, which goods are furnished him by the company. From time to time reports of sales are made. Goods shipped from Toledo are consigned to the "Grand Union Tea Company, Ionia, Michigan, I. J. Smith, agent." The supplies for the Toledo house are received from New York headquarters.

Respondent says his conviction was unlawful and should be set aside for two reasons:

(1) Because the ordinance in terms discriminates between classes of peddlers.

(2) Because respondent was at the time of his arrest and conviction engaged in interstate commerce.

*W. W. Wicker* and *George E. Nichols,* for appellant.

*Alfred R. Locke,* City Attorney, for the people.

OSTRANDER, J. (*after stating the facts*). For reasons given in the opinion above referred to, the specific

findings of fact and law made by the court below are not considered. The finding that respondent is guilty, as charged, is treated as a general verdict.

That respondent was a peddler seems not to be disputed. His first contention, which is that because the ordinance in terms excepts persons selling vegetables, fish, meat, or farm produce, and bakers who deliver bread and pastry to customers, from its provisions, it is therefore invalid, is ruled against him by *People* v. *Sawyer*, 106 Mich. 428. See, also, *People* v. *Baker*, 115 Mich. 199.

. His second contention raises a more serious question. If respondent is actually, and we may add, for reasons given later on, in good faith, engaged in interstate commerce, it is not to be doubted that the license fee demanded is in effect a tax upon such business, which the municipality had no right to lay. *Robbins* v. *Taxing District*, 120 U. S. 489; *Brennan* v. *City of Titusville*, 153 U. S. 289; *People* v. *Bunker*, 128 Mich. 160. The single question is, Was he engaged in interstate commerce? Usually, this is a question of law to be answered by the court. But it may occur that it should be answered accordingly as inferences are drawn from undisputed facts warranting more than one inference, or from disputed facts. Good faith is a conclusion drawn from facts, and the bona fides of commercial transactions has, in several instances, entered into the determination of questions of like nature. *Austin* v. *Tennessee*, 179 U. S. 343; *Cook* v. *Marshall County*, 196 U. S. 261; *Kimmell* v. *State*, 104 Tenn. 184. From the facts proven or admitted upon the trial, this court may and does assume the existence of a further fact not proved at the trial, which is that the Grand Union Tea Company has upon its voluntary application been admitted to do business in this State upon the footing of corporations organized under the laws of the State. Otherwise, it would appear that this corporation was conducting a general, retail, mercantile business at 12 points within the State without having complied with the laws of the State. The statute (3 Comp. Laws, § 8574) imposes a tax

upon corporations, domestic and foreign, doing such a business in the State, and avoids all contracts made by them until the tax is paid. The act is construed to be not applicable in cases where foreign corporations do business in the State merely by selling goods through itinerant agents, and delivering commodities manufactured outside of the State. *Coit & Co.* v. *Sutton*, 102 Mich. 327 (25 L. R. A. 819); *M. I. Wilcox Cordage & Supply Co.* v. *Mosher*, 114 Mich. 64. See, also, *Moline Plow Co.* v. *Wilkinson*, 105 Mich. 57. It is evident that respondent is not concerned, in fact, about the payment of the license fee or whether the goods which he sells come to him from a general stock kept within or without the State. He has a continuing, local, retail trade. The business which he carries on is like interstate commerce in this: That the goods for which he takes orders are sent from outside the State, and are the property of a corporation organized in another State. It is unlike interstate commerce, in that the business is essentially a local retail business, the packages are not such as are usually made up and handled in the ordinary course of actual commerce, nor made up for any particular person, and the owner of the goods has been admitted to the State, upon the footing of domestic corporations, and is actually carrying on the same business at various points in the State, in some places out of its stores, in others by peddlers. The method employed in sending goods to respondent is an attempt to evade a local regulation affecting alike the agents of all corporations admitted to do business in the State, and not a good-faith engagement in interstate commerce. The respondent is really doing the same business as that considered in *City of Muskegon* v. *Zeeryp*, 134 Mich. 181, in which case an agent of this company was the respondent. See, also, *City of Alma* v. *Clow*, 146 Mich. 443. It is clear, too, that he sells some goods, and distributes premiums, out of stock on hand. The business so carried on would be in any case within the principle announced in *Machine Co.* v.

*Gage,* 100 U. S. 676; *Emert* v. *Missouri,* 156 U. S. 296.

We might rest our decision, affirming the conviction, upon the facts last stated. We are not required to do so, since we are of opinion that respondent is not engaged at all in interstate commerce, but is engaged in peddling goods for a corporation, which has, for the purposes of this case, the status of a domestic corporation.

The conviction is affirmed.

GRANT, BLAIR, MONTGOMERY, and MOORE, JJ., concurred.