[No. 7436.   Decided October 15, 1908.]

The State of Washington, *Respondent*, v. W. W. Glasby, *Appellant*.[1]

COURTS—RULE OF DECISIONS—FEDERAL QUESTION.  Questions involving interstate commerce must be controlled by the decisions of the United States supreme court.

COMMERCE—INTERSTATE COMMERCE—SOLICITING ORDERS FOR NON-RESIDENT.  The business of soliciting orders for goods by one in the employ of a nonresident of this state, to be filled by the employer and shipped by him into this state, if the orders are accepted, is interstate commerce, and is not subject to regulation by the enactment of an ordinance requiring the payment of a license fee therefor, regardless of whether there is any discrimination between residents and nonresidents.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered April 21, 1908, upon a trial and conviction of the violation of an ordinance regulating peddlers.  Reversed.

*E. B. Dufur*, for appellant.

*A. J. Allen*, for respondent.

HADLEY, C. J.—The defendant in this action was convicted, in the police court in the city of South Bend, Washington, of the charge of violating an ordinance of that city concerning the imposition and regulation of licenses.  The penalty imposed by the police justice was a fine of $10 and costs.  On appeal to the superior court of Pacific county, the judgment of the police court was affirmed, and the defendant has appealed to this court.

The cause was tried in the superior court on an agreed statement of facts, the material facts being as hereinafter set forth.  Omitting the title and all formal parts, the ordinance [No. 366] in question is as follows:

"Sec. 1.   Every person canvassing or taking orders for pictures, clothing, groceries or any other merchandise, either

[1]Reported in 97 Pac. 734.

for immediate or future delivery, within the city of South Bend, shall be deemed a peddler, and shall pay a license fee of $10.00 per day.

"Sec. 2.  Any peddler who pursues the said calling referred to in Sec. 1 of this ordinance, without having first procured a license therefor, shall be deemed guilty of a misdemeanor and upon conviction thereof, shall pay a fine of not more than fifty dollars together with costs of prosecution.

"Sec. 3.  The city clerk is hereby authorized to issue Peddlers' licenses upon application, and to collect the aforesaid license fee.

"Sec. 4.  Commercial travelers employed by wholesale houses and selling at wholesale only, staple articles of merchandise, shall not be deemed peddlers within the meaning of this ordinance.  All ordinances or parts of ordinances in conflict herewith are hereby repealed."

The charge against the appellant was that of peddling without a license in violation of the ordinance.  Brettell Brothers are a firm residing in Portland, Oregon, and having their business in that city and state.  They have no agency or branch business within the state of Washington.  The firm is engaged in supplying the trade with coffees, teas, spices, and staple groceries upon orders therefor sent to them at the city of Portland by their traveling agents and solicitors employed by the firm to canvass for, solicit, and secure orders for their goods.  The traveling agents and solicitors do not deliver the goods ordered; they simply secure orders by sample, and send the orders to the firm in Portland.  The firm may accept or reject the orders as they choose, and such as they accept are filled, and the goods are shipped and delivered to the respective parties in unbroken packages, by persons other than the traveling agents and solicitors securing the orders.  The appellant is a citizen of Oregon, and was in the employ of the firm of Brettell Brothers as a traveling agent and solicitor for orders for their goods, securing such orders by samples with which appellant was provided by his employers.  The appellant never sold or undertook to sell any

of his employers' goods further than to secure orders therefor and to forward such orders to his employers in the city of Portland, Oregon. He did not in person deliver any of the goods to customers.

Appellant argues that the ordinance in question violates section 8 article 1 of the Constitution of the United States, with reference to the power of Congress to regulate commerce between the several states. He insists that the case of *Bacon v. Locke*, 42 Wash. 215, 83 Pac. 721, is decisive of this case in his favor. We think that case cannot be said to be in all particulars decisive of this one. The statute there under consideration provides: "After shipment to the state" one who canvasses and sells by sample to consumers certain specified articles of merchandise shall pay in advance a license tax of $200 per year, to be paid in each county where the sales are made. It was held that the clause in the statute "after shipment to the state" has the effect of discriminating in favor of goods manufactured in this state and against those shipped here from a sister state, for which reason it violates the provisions governing interstate commerce. The decision was apparently rested upon the element of discrimination. That feature is lacking in the case at bar. The ordinance makes no discrimination in favor of residents of this state, but its provisions apply to all, both residents and nonresidents. We must therefore examine as to the status of residents of another state under such an ordinance, in view of their right to protection for the purposes of interstate commerce.

If a question of interstate commerce is involved, then manifestly the subject must be controlled by the decisions of the supreme court of the United States, as that tribunal is clothed with the power of final interpretation where Federal questions are concerned. That a question of interstate commerce is involved seems to be clear, from the decision in *Robbins v. Shelby County Taxing Dist.*, 120 U. S. 489, 7 Sup. Ct. 592,

30 L. Ed. 694. A statute of Tennessee was there under consideration. It provided that:

"All drummers and all persons not having a regularly licensed house of business in the taxing district of Shelby county, offering for sale or selling goods, wares, or merchandise therein by sample, shall be required to pay to the county trustee, the sum of $10 per week, or $25 per month for such privilege."

It was held that the statute applied to persons soliciting the sale of goods on behalf of individuals or firms doing business in another state, and that so far as it applied to them it was a regulation of commerce among the states and violated the constitution of the United States, which grants to Congress the power to make such regulations. The language of the opinion is strong, clear, and conclusive. We call attention to the entire opinion, and particularly to the following extract, which shows the trend of the reasoning:

"In view of these fundamental principles, which are to govern our decision, we may approach the question submitted to us in the present case, and inquire whether it is competent for a state to levy a tax or impose any other restriction upon the citizens or inhabitants of other states, for selling or seeking to sell their goods in such state before they are introduced therein. Do not such restrictions affect the very foundation of interstate trade? How is the manufacturer, or a merchant, of one state, to sell his goods in another state, without, in some way, obtaining orders therefor? Must he be compelled to send them at a venture, without knowing whether there is any demand for them? This may, undoubtedly be safely done with regard to some products for which there is always a market and a demand, or where the course of trade has established a general and unlimited demand. A raiser of farm produce in New Jersey or Connecticut, or a manufacturer of leather or wooden ware, may, perhaps, safely take his goods to the city of New York and be sure of finding a stable and reliable market for them. But there are hundreds, perhaps thousands, of articles which no person would think of exporting to another state without first procuring an order for them. It is true, a merchant or manufacturer in one state may erect or hire a warehouse or store in another state, in

which to place his goods, and await the chances of being able to sell them. But this would require a warehouse or store in every state with which he might desire to trade. Surely, he cannot be compelled to take this inconvenient and expensive course. In certain branches of business, it may be adopted with advantage. Many manufacturers do open houses or places of business in other states than those in which they reside, and send their goods there to be kept on sale. But this is a matter of convenience, and not of compulsion, and would neither suit the convenience nor be within the ability of many others engaged in the same kind of business, and would be entirely unsuited to many branches of business. In these cases, then, what shall the merchant or manufacturer do, who wishes to sell his goods in other states? Must he sit still in his factory or warehouse, and wait for the people of those states to come to him? This would be a silly and ruinous proceeding. The only other way, and the one, perhaps, which most extensively prevails, is to obtain orders from persons residing or doing business in those other states. But how is the merchant or manufacturer to secure such orders? If he may be taxed by such states for doing so, who shall limit the tax? It may amount to prohibition. To say that such a tax is not a burden upon interstate commerce, is to speak at least unadvisedly and without due attention to the truth of things."

On the question of discrimination between residents and nonresidents, to which we have hereinbefore referred, the court, in the same opinion, further said:

"It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers—those of Tennessee and those of other states; that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. This was decided in the case of The State Freight Tax, 15 Wall. 232. The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce."

It will thus be seen that the matter of discrimination is immaterial. Interstate commerce cannot be taxed at all,

notwithstanding the fact that a domestic tax may have been levied upon the same class of trade in a given state. There is no essential difference in principle between the case at bar and the one before cited from the supreme court of the United States. For confirmation of the principles announced in that case see the following later decisions: *Corson v. Maryland,* 120 U. S. 502, 7 Sup. Ct. 655, 30 L. Ed. 699; *Asher v. Texas,* 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368; *Lyng v. Michigan,* 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; *Crutcher v. Kentucky,* 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649; *Brennan v. Titusville,* 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; *Stockard v. Morgan,* 185 U. S. 27, 22 Sup. Ct. 576, 46 L. Ed. 785.

Touching the argument that such license tax is within the police regulative power of the state, the court in *Crutcher v. Kentucky, supra,* said:

"But the main argument in support of the decision of the Court of Appeals is that the act in question is essentially a regulation made in the fair exercise of the police power of the State. But it does not follow that everything which the legislature of a state may deem essential for the good order of society and the well being of its citizens can be set up against the exclusive power of Congress to regulate the operations of foreign and interstate commerce. We have lately expressly decided in the case of *Leisy v. Hardin,* 135 U. S. 100, that a state law prohibiting the sale of intoxicating liquors is void when it comes in conflict with the express or implied regulation of interstate commerce by Congress, declaring that the traffic in such liquors as articles of merchandise between the States shall be free. There are, undoubtedly, many things which in their nature are so deleterious or injurious to the lives and health of the people as to lose all benefit of protection as articles or things of commerce, or to be able to claim it only in a modified way. Such things are properly subject to the police power of the State."

The respondent cites the case of *Titusville v. Brennan,* 143 Pa. St. 642, 22 Atl. 893, 24 Am. St. 580, 14 L. R. A. 100, which strongly supports respondent's contention. But that

decision was reversed by the supreme court of the United States in *Brennan v. Titusville, supra*. The following Michigan cases are also cited by respondent: *City of Alma v. Clow*, 146 Mich. 443, 109 N. W. 853, and *People v. Smith*. 147 Mich. 391, 110 N. W. 1102. At first glance these opinions seem to support respondent's contention, and a hasty reading of them leads the reader to inquire if they are consistent with the prior decision of the supreme court of Michigan in *People v. Bunker*, 128 Mich. 160, 87 N. W. 90, cited by appellant. In that case the court followed and discussed some of the decisions we have cited above, and that decision was a departure from some that had been rendered in the earlier history of Michigan. The court apparently bowed to the wisdom and interpretation of its superior, the supreme court of the United States. Careful examination of the two later Michigan cases, however, shows that the court decided upon the facts that no question of interstate commerce was involved. In the first of the two, a New Jersey corporation maintained a warehouse in Michigan from which its trade in that state was supplied, and in the second, the agent, also a New Jersey corporation, sold some goods from a stock kept on hand in the state, and distributed premiums out of such stock. On such facts, the cases were decided on the theory that the stock of goods kept within the state for the supply of the trade therein gave to the corporation in each instance the status of a domestic corporation, and that no question of interstate commerce was, for that reason, involved. There is, therefore, no inconsistency in the Michigan decisions when we consider the theory of that court as to the facts in the different cases. No facts exist in the case at bar that classify it with the two Michigan cases mentioned, even if the reasoning of those cases should be approved by the Federal supreme court. No warehouse or stock of goods is kept within this state from which goods are received to fill orders, but all orders are sent to Portland, Oregon, and are filled there by appellant's employers, who reside there and whose supply

house is there. The business in which appellants were engaged was therefore clearly interstate, and was not subject to regulation by this state or a municipality thereof.

The judgment is reversed, and the cause remanded with instructions to vacate the judgment, dismiss the action, and discharge the appellant.

RUDKIN, DUNBAR, CROW, and MOUNT, JJ., concur.