GRAND UNION TEA CO. v. CITY OF IONIA.

MUNICIPAL CORPORATIONS—LICENSE FEE—PEDDLERS—INTERSTATE COMMERCE—DURESS.

An agent of plaintiff, engaged in selling teas by sample, was arrested for violation of a city ordinance requiring the payment of a license. Plaintiff was a foreign corporation, and claimed to be doing an interstate business. Pending the determination of the prosecution, the agent paid the required weekly fees under protest in writing, claiming that the ordinance was void as an interference with interstate commerce, that the fee required was exorbitant, and that the corporation would demand repayment of the fees which it stated were paid to avoid arrest, in case the courts should hold that the fee was exacted without authority of law. The validity of the ordinance was sustained, on appeal from the conviction of the agent, who thereafter left the employ of defendant. *Held*, that the written protest, without an assignment to plaintiff of the agent's claim, was insufficient to authorize a recovery, and that the evidence did not show payment under duress.

Error to Ionia; Davis, J. Submitted February 20, 1911. (Docket No. 172.). Decided March 13, 1911.

Assumpsit by the Grand Union Tea Company against the city of Ionia to recover back license fees paid under protest. Judgment for defendant. Plaintiff brings error. Affirmed.

*George E. Nichols* and *W. W. Wicker,* for appellant.

*Laurence W. Smith,* for appellee.

MOORE, J. It will simplify the consideration of this case to refer to the opinion in *People.*v. *Smith,* 147 Mich. 391 (110 N. W. 1102). Mr. Smith was the agent of the plaintiff in this suit which is brought to recover money paid by Mr. Smith for a peddler's license, pending the litigation of *People* v. *Smith, supra.* The statement in *People* v. *Smith* discloses fully the method of doing business, and that method remained substantially the same during the period for which the sums of money sought to be recovered here were paid, except that for a part of the time Mr. Smith procured his supplies at the branch store at Grand Rapids, instead of sending his orders to Toledo. During the pendency of the case of *People* v. *Smith,* where it was decided that Mr. Smith was a peddler, and the ordinance requiring a fee of $5 was sustained, the ordinance was amended so as to require a weekly payment of $10. Each time Mr. Smith paid the license fee he filed with the clerk a writing which recited his relations with the plaintiff company, and the manner of doing the business, and ending as follows:

"(4) That section 5 of ordinance 38 of the city of Ionia under which you claim and demand a license fee is void as to said Grand Union Tea Company and its method of doing business, and is in violation of the interstate commerce law and the Constitution of the United States as an interference with the interstate commerce.

"(5) That said section of said ordinance 38 under which you claim and demand a license fee is void, invalid

and of no effect for the reason that it is prohibitive, excessive, exorbitant and discriminative and was intended so to be, and is in violation of law and of the interstate commerce law and the Constitution of the United States as a discrimination between the citizens of the different States as well as an interference with interstate commerce.

"(6) That for the foregoing reasons you have no right to demand of the Grand Union Tea Company, or of me as its agent, any license fee whatever for carrying on the business of said company as carried on as above described, and to avoid repeated arrests, and inasmuch as said question is now in the courts in behalf of said Grand Union Tea Company and for the purpose of preserving its business this payment is made with the distinct understanding that in case the courts shall hold that such license has been exacted without authority of law, that the said Grand Union Tea Company will demand and recover of the city of Ionia the amount of money so paid under this protest, together with costs of suit.

"GRAND UNION TEA COMPANY,
"By I. J. SMITH, its Agent."

We may as well state here that the claim that the ordinance is in violation of the interstate commerce law was decided adversely to the claim of the plaintiff in *People* v. *Smith, supra,* and need not be referred to any further. The case was tried before the circuit judge who made findings of fact and conclusions of law. Among the findings of fact was the following:

"Isaac J. Smith as the agent of plaintiff never assigned to the plaintiff any claims against the city of Ionia for money paid under such protests."

The conclusions of law are as follows:

"(1) That the amendment of section 5 of ordinance No. 38, approved by the common council of the city of Ionia on the twenty-fifth day of September, A. D. 1905, was a legal exercise of the legislative power of said common council.

"(2) That there was no duress exercised upon plaintiff in the making of said payments.

"(3) That there was no duress exercised upon the said Isaac J. Smith in the making of said payments.

"(4) That the payment and all payments made as herein set forth were voluntary.

"(5) That the conditions of said protest in which notice was given that the money so paid would be recovered have not occurred, inasmuch as the courts did not hold that said license fee had been exacted without authority of law.

"(6) That the amendment of section 5, ordinance No. 38, aforesaid, was neither prohibitive, excessive nor discriminative as against said plaintiff or said Smith or intended so to be or in violation of the laws or Constitution of this State or of the United States.

"(7) It follows, therefore, as a matter of law, that the defendant is not liable to the plaintiff for any sum or for the sum claimed in this suit."

The counsel for appellant contend, we quote from the brief:

" In the discussion of the proposition involved in this case, we probably can dispose of them with as much brevity as in any other way by taking up the finding of law which raises the following questions:

" (1) The validity, under the facts, of section 5, ordinance No. 38, as amended September 25, 1905, as to the plaintiff.

" (2) The right of the city to enforce this ordinance against plaintiff, even if valid.

" (3) Having paid the license fee, under protest, the right to recover it back, provided the ordinance is void or not enforceable against plaintiff."

Counsel for the appellee adds to these propositions the following:

"(4) The right existing in defendant to retain the payment of license fees, even if the ordinance is void or unenforceable as to plaintiff."

In our view of the case, a disposition of proposition 4 will make it unnecessary to discuss the other propositions. The section of the ordinance as amended which is material reads:

"Peddlers or persons going about the city with a wagon or vehicle, drawn by any horse, mule or ox or any team of either of the same, carrying goods, wares, supplies, property, samples of the same, selling or offering for sale

by sample or otherwise shall pay for each weekly license the sum of ten dollars."

The peddler who paid the money for licenses was Mr. Smith. The licenses were issued to him. The only testimony that the payment was not voluntary is such inference as may be drawn from the statement in the written protest:

"(6) That for the foregoing reasons you have no right to demand of the Grand Union Tea Company or of me as its agent, any license fee whatever for carrying on the business of said company as carried on as above described and to avoid repeated arrests, and inasmuch as said question is now in the courts in behalf of said Grand Union Tea Company, and for the purpose of preserving its business this payment is made with the distinct understanding that in case the courts shall hold that such license fee has been exacted without authority of law, that the said Grand Union Tea Company will demand and recover of the city of Ionia, the amount of money so paid under this protest, together with costs of suit."

This part of the protest indicates that the Grand Union Tea Company desired to be in a position to continue its business and recover back the money paid "in case the courts shall hold that such license fee has been exacted without authority of law." The courts did not so hold, and that part of the written protest availed the plaintiff in this case nothing. The part of the protest reading "and to avoid repeated arrests" must refer to Mr. Smith. He was the only one who had been arrested, and whose case was pending in the courts when the protest was made. He was the one who was doing the peddling. He was the one who was licensed to peddle. The record is barren of any testimony from which the inference could be drawn that any one else was threatened with arrest. He had left the service of the plaintiff at the time of the trial. The court found he had not assigned his claim, if he had any, to the plaintiff. The language of the court in *Noyes* v. *State*, 46 Wis. 250 (1 N. W. 1, 32 Am. Rep. 710), is suggestive:

" The second count of the complaint seeks to recover several license fees exacted and paid under such void provisions by persons employed by the plaintiff's firm as peddlers, to sell goods of the firm.  So far as such payments may have been voluntary, they cannot be recovered back. *Van Buren* v. *Downing*, 41 Wis. 122.  But so far as they were made under duress or menace equivalent to duress by public officers, they constitute a valid claim against the State.  *Matheson* v. *Town of Mazomanie*, 20 Wis. 201; *Kellogg* v. *Supervisors*, 42 Wis. 97; *Allen* v. *City of Burlington*, 45 Vt. 202; *Atwell* v. *Zeluff*, 26 Mich. 118; *Bank* v. *City of New York*, 43 N. Y. 184; *Bank* v. *City of New York*, 51 N. Y. 638, reversing s. c. 51 Barb. (N. Y.) 159.

"*Prima facie*, the right of action to recover back each license fee under duress or menace would be in the peddler who paid it.   Although the peddlers from whom the license fees set forth in the count were exacted, may have been employed by the plaintiff's firm, yet in their relations to the State they were mere peddlers, each in his individual capacity and right.  The license fee of each, by whomsoever actually paid, was necessarily paid in the name and right of the peddler who took the license.  And the duress or menace which could make the payment involuntary should apparently be of the peddler himself. It is not apparent how duress or menace of the plaintiff's firm could affect the payment of the peddler.

"An assignment by the plaintiff's partner is averred; but no assignments from the peddlers.  The mere fact that the peddlers were employed by the plaintiff's firm as averred, does not appear to vest the right of action in the plaintiff.  And indeed there is such confusion and conflict of averment in the count, that it appears impossible to determine by whom the payments to the State were actually made, the peddlers or the plaintiff's firm, or upon whom the duress or menace operated, the plaintiff's firm or the peddlers.  The uncertainty, or perhaps more properly the duplicity, of the count in this respect, is so great as to leave it without any certain and definite cause of action."

This conclusion makes it unnecessary to discuss the other propositions of counsel.

Judgment is affirmed.

HOOKER, MCALVAY, BROOKE, and BLAIR, JJ., concurred.